RECEIVED

JAN 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOSEPH P. CARSON,                              )
                                               )
    Petitioner                          )
                                               )
                                               )    Civil Action No: 06-1833 (PLF)
    v.                                  )
U.S. OFFICE OF SPECIAL COUNSEL,                )
                                               )
    Respondent                          )
                                               )
                                               )
_____)

## OBJECTION TO ASPECTS OF ORDER OF DECEMBER 29, 2006, GRANTING ENLARGEMENT OF TIME

Petitioner realizes the Court has the power to grant an enlargement of time

in this situation for any reason or no reason.  Therefore, he has no basis to object

to the Court's order granting respondent an enlargement of time.  But he objects to

the misrepresentations of the respondent in requesting it.  He respectfully suggests

such misrepresentations demean the Court and the principles for which it stands

and upon which it depends for its moral authority in society.

For almost three years, petitioner has been seeking "justice" in this Court,

by which there is an inquiry into truth - about facts and law - leading to an

outcome in which the Court ensures respondent complies with each and every

statutory obligation it has to protect the petitioner from prohibited personnel

practices (PPPs).  This has yet to happen, in significant part because respondent's

1

representative do not respect truth and do not respect this Court' dependence on

them to represent truth to render justice. But the Court appears to enable their

misconduct.

If respondent respect the truth and this Court enough to speak truth to it, its

motion requesting an enlargement of time would have stated something as:

> Petitioner served the respondent on December 6, 2006 and sent an extra
> copy of the filing, as a courtesy to Ms. McBarnette. He also emailed her
> about his actions. Ms. McBarnette and/or others served incorrectly assumed
> that a summons, in addition the show cause order and the petition for writ of
> mandamus was required. Based on that misunderstanding, respondent
> assumed it had not been properly served and did nothing to prepare a
> response to the Show Cause order, but it did inform the petitioner, by letter
> of December 12, of what it incorrectly thought had to be done to effect
> service.
>
> Petitioner, after discussing the matter with the Clerk's Office, ascertained
> the proper service had been made on December 6, and prepared an affidavit
> of service on December 22, which he emailed to Ms. McBarnette, as a
> courtesy. At that point, Ms. McBarnette realized her error, that a summons
> was not required to effect service, and a response to the show cause began
> to be prepared. Solely because of the error on respondent's part, an error
> which the petitioner made a number of good-faith efforts to avoid and
> correct, about two weeks were lost in preparing a response to the show
> cause order. The holidays are also inconvenient. Respondent
> acknowledges the efforts of the petitioner to ensure it timely responded to
> the Court's order, absent them, respondent would not have been informed of
> its error until the deadline for responding to the Court's order had
> passed...(see Exhibits 1 - 3)

This Court can assume that the petitioner "has got it," he understands that

respondent will represent anything it thinks it can get away with to this Court and

2

the Court really does not seem to mind. He has "got it" that any good faith effort he makes to cooperate with respondent in this inquiry into truth can be used against him. Petitioner thinks the Court has the power and responsibility to direct the respondent to respond to this evidence of misrepresentations on its part and hopes it chooses to exercise it.

Regarding the inquiry into truth, intended to lead to justice - the law is clear that respondent and its attorneys have a positive legal and professional duty to "act in the interests" of federal employees, as petitioner, who seek it and their protection (see 5 USC 1201 Appendix). Attorneys at respondent are somewhat similar to public defenders - paid by the government to act the interests of those who seek their protection. The burden of proof should be on respondent to demonstrate compliance with it statutory obligations to petitioner, given the law's mandate and petitioner's pro se status.

The facts are clear too. OSC was created as an independent executive branch agency by the Whistleblower Protection Act of 1989 for the primary reason of protecting federal employees as appellant from experiencing exactly what has repeatedly happened to him - to suffer unlawful retribution for doing his positive legal and professional duty as a licensed professional engineer (P.E.) employed as a nuclear safety engineer by the agency - his "doubly sworn duty as a P.E. and

3

federal employee - to "blow whistles," when necessary to protect public health and safety.

Petitioner has "prevailed" in no fewer than 8 separate whistleblower-related decisions at the U.S. Merit Systems Protection Board (MSPB) since 1994, including 5 unpublished Board decisions: Carson v. Department of Energy SL-1221-94-0179-W-1; AT-1221-95-1197-W-1; SL-1221-94-0179-C-1; AT-1221-96-0948-W-3, 98-0250-W-1, 98-0623-W-1; and AT-1221-96-0948-C-3, 98-0250-C-3, 98-0623-C-3 and 3 published decisions Carson v. Department of Energy, 77 MSPR 453 (1998); 85 MSPR 171 (2000); and 88 MSPR 260 (2001). Some of the same agency wrongdoing is cited in Carson v. Department of Energy, 398 F.3d 1369 (Fed. Cir. 2005).

In contrast, even though he has also filed over 20 prohibited personnel practices (PPP) complaints with OSC since 1992, OSC has yet to determine, despite its statutory obligations to protect him from PPP's, "there are reasonable grounds to believe a PPP has occurred, exists, is to be taken" involving him.

That is the crux of 15 years of Carson v. Department of Energy - OSC and its licensed attorneys fail to do it and their positive legal and professional duty to protect the appellant for his doing his positive legal and professional duty - his doubly sworn duty as a P.E. and federal employee - to "blow whistles," when

4

necessary to protect public health and safety. And when he tries to bring OSC

before the bar of justice in this Court, he seems to get one run-around after

another, in matters big and small.

Petitioner acknowledges that Congressional oversight, not a judicial review,

is a much better Constitutional tool to get to the bottom of this. He is assiduously

trying to spur it. (Exhibits 4 and 5)

But he also realizes he has been a fool, a mark in a charade, designed to

benefit lawyers in respondent, in so-called "whistleblower advocacy groups, and

private practice specializing in federal employment law. Hundreds of attorneys

are implicated in a meltdown of legal ethics at OSC - for failing to comply with

their positive legal and professional duty to "blow whistles" about it. There is no

good reason why he is pursuing "justice" in this matter in this Court - OSC's

lawbreaking should have been "outed" ten or more years ago, by involved and

knowledgeable attorneys. He is preparing an article for the ABA Center for

Professional Responsibility publication "the Professional Lawyer," about the

meltdown he has experienced in legal ethics and the editor has expressed interest

in it. (Exhibit 6)

Evidence of the meltdown in all-too-evident. For instance, OSC, in January

2002, issued a press release about a PPP settlement involving a senior MSPB

administrative judge (Exhibit 7) that only underscores its non-compliance with the law and precedent established in Weber v. United States, 209 F.3d 756 (D.C. Cir. 2000).

OSC cannot, as it described in the press release, "dangle" a draft positive PPP determination in front of an agency to induce a settlement.  OSC is not permitted to make or use "draft" positive PPP determinations for such a purpose. When it makes a positive PPP determination, as the press release indicates it did, then by Weber (page 758):

> "If OSC determines that a prohibited personnel practice has occurred, it **must report** (emphasis added) its findings to the Merit System Protection Board."

but it did not, not even when the PPP happened in MSPB no less!  Instead, it informally transmitted a draft positive PPP determination, which disappeared when the settlement happened.

MSPB Chairman McPhie, in an October 2006 letter to Petitioner (Exhibit 8) acknowledged that this OSC positive PPP determination (as every other OSC positive PPP determination in FY 2002-2004) resulted in neither a formal positive PPP determination being transmitted to it per 5 USC 1214(b)(2)(B), nor the required follow-up report, per 5 USC 1214(b)(2)(D), following the settlement.

Both OSC and MSPB appear blithely ignorant of their respective statutory

6

obligations in this matter, nearly two years after <u>Weber</u> was issued.  Chairman

McPhie still appears to be ignorant and/or in denial about the related lawbreaking.

That's a meltdown in legal ethics that imperils us all, given the number of

federal employees on the "front lines" of the war on terror, OSC and MSPB are

charged to protect from PPPs..

Petitioner is hopeful the new Congress will discharge its Constitutional

responsibility and authority to conduct meaningful and significant oversight of

OSC and MSPB compliance with law in protecting federal employees from PPPs,

largely obviating his efforts in this Court.

Respectfully Submitted,


Joseph P. Carson, P.E., Petitioner
10953 Twin Harbor Dr
Knoxville, TN 37934
865-300-5831

RECEIVED

JAN 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# List of Exhibits

1. Petitioner's email to Ms. McBarnette of December 6, 2006 about his service of the filing and order.

2. DOJ letter to petitioner of December 12, 2006, in which the lack of a summons is cited as the reason service was not accepted by DOJ.

3. Petitioner's email to Ms. McBarnette of December 22, 2006 about his understanding that service was effected on December 6, 2006.

4. Petitioner's draft op-ed to Washington Post, which he will submit in near future, so that it may run when Congress is in session.

5. Petitioner's November 18, 2006 letter to President Bush, calling for the removal, for cause, of the heads of OSC and MSPB.

6. Email thread of December 16, 2006 with ABA Center for Professional Responsibility about petitioner's proposed article about legal ethics for attorneys at OSC, 1

7. OSC January 2002 press release of settlement of a positive PPP determination involving senior administrative judge at MSPB

8. MSPB Chairman McPhie September 25, 2006 letter to Petitioner which states MSPB received no positive PPP determinations from OSC in 2002-2004 and no follow-up reports about settlement resulting from such positive PPP determinations in at least the past five years.

8

To: andrea.mcbarnette@usdoj.gov
From: Joe Carson <jpcarson@tds.net>
Subject: status of Carson v. OSC, docket nos. 06-1833, 1834
Cc:
Bcc:
Attached:


06-1833 - I mistakenly thought the court had served the petition for writ of mandamus on you. I mailed it, with the relevant order today, including a copy directly to you. I calculate your response is due by January 2, 2006.

06-1834  - I anticipate receiving the summons from the Court tomorrow and will immediately serve it on the gov't.  This case involves FOIA, I presume DOJ may have someone who specializes in FOIA suits.



Jeffrey A. Taylor
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

December 12, 2006

Joseph P. Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN 37922

    Re:    Complaints re: Carson v. U.S. Office of Special Counsel

Dear Mr. Carson:

    On December 12, 2006, we received two packages sent via certified and priority U.S. mail. Both packages contained a "Petition for Writ of Mandamus from the U.S. Office of Special Counsel" with related OSC file nos. MA-06-2118 and MA-06-2752. No summons was included in either package. Consequently, to the extent that your correspondence was intended to effect service on the United States Attorney's Office, service is insufficient because it was not accomplished in accordance with the applicable Federal Rule of Civil Procedure.

    By letter dated December 7, 2006, we informed you that we received from you two other packages containing petitions without summons. We informed you that such correspondence did not constitute service as the packages lacked summons and in addition, were not addressed to the "Civil Process Clerk" at the Office of the United States Attorney.

    Fed. R. Civ. P 4(i)(2)(A) provides that service on an agency of the United States, such as the U.S. Office of Special Counsel, is effected by serving the United States as prescribed by Rule 4(i)(1) and by also sending a copy of the summons and complaint by registered or certified mail to that agency. In this connection, Rule 4(i)(l) provides that service on the United States Attorney for the District in which a civil action is brought may be accomplished by hand delivery of the summons and complaint to the United States Attorney, or an Assistant United States Attorney or clerical employee designated to receive service on the United States Attorney's behalf. In this Office, the United States Attorney has designated the Secretary, or acting Secretary, to the Chief of the Civil Division, as well as the Secretaries to the Deputy Chiefs of the Division, as persons to whom hand-delivery of a summons and complaint may be made. Alternatively, Rule 4(i)(1) permits service to be accomplished by sending the summons and complaint by registered or certified mail addressed to the "Civil Process Clerk" at the Office of the United States Attorney. Please note that addressing the package to **Assistant United States Attorney Andrea McBarnette**, as you addressed your package, is contrary to the rule and does not constitute service.

Ex 2-1

In addition, please note that Fed. R. Civ. P. 4(d), which imposes a duty on "[a]n individual, corporation, or association that is subject to service under subdivision (e), (f), or (h) [of Rule 4]" to avoid unnecessary costs of serving the summons in a civil action does not apply to service on the United States, which is governed by Rule 4(i).

You should be aware that the time for a response to a complaint will, therefore, not begin to run until proper service has been effected.

Sincerely,

JEFFREY A. TAYLOR
United States Attorney

By:     RUDOLPH CONTRERAS
Chief, Civil Division

2-2

To: mcbarnette_andrea
From: Joe Carson <jpcarson@tds.net>
Subject: declaration of service
Cc:
Bcc:
Attached:

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**JOSEPH P. CARSON,**

)

**Petitioner**

)

)    **Civil Action No: 06-1833 (PLF)**

)
v.                                        **U.S. OFFICE OF SPECIAL COUNSEL,**

)

)

**Respondent**

)

)

_____
_____ )

## <u>DECLARATION OF SERVICE</u>

Petitioner is pro se and a non-attorney. He has a copy of the Rules of
Civil Procedure as well as the local Court rules. When, after reviewing them,
he has a question about their application, he contacts the Court's Pro Se
office and/or the Clerk's Office and/or Mrs. Davis, the presiding judge's
docket clerk.

Ex 3-1

On November 8, 2006, a show cause order for this case was issued. Petitioner assumed it would be served on the Office of Special Counsel by U.S. Marshals Service, similar to how his previous, similar case, docket no. 04-315, was handled. When a response to the Order was not made by early December by Office of Special Counsel, petitioner, based on the understanding that he, not the U.S. Marshals service, was responsible for service, served the order and the petition for writ of mandamus, without a summons, by certified mail on December 6, 2006. He presumed the show cause order obviated the need for a summons. The associated postal records of this service are attached.

To ensure this was adequate, he also contacted the Court about the situation. This resulted in several calls, with resulted in his understanding that the U.S. Marshals Service was responsible to serve the show cause order, but that it had a backlog, and he should wait a bit more.

Then he received the Department of Justice letter, dated December 12, 2006, stating that because a summons was not provided with the documents he served on it on December 6, 2006, service had not been made. It is attached.

Petitioner then renewed his efforts to ascertain if the U.S. Marshals service had served the show cause order. He was told, on December 20, 2006, that it had no record of receiving the November 8, 2006 Show Cause Order.

After some more phone calls, the office of the Clerk of the Court informed petitioner on December 21, 2006 that he was responsible to serve the show cause order, but that a summons was not required, based on the wording of show cause order. This is contrary to the position of the Department of Justice's letter of December 12, 2006.

Petitioner desires to comply with all applicable rules, but if a show cause order obviates the need for a summons, as "summons not issued" on the case's docket sheet seems to imply, as does the wording of the Show Cause Order, then he properly served the required documents on December 6, 2006 as the attached postal receipts and certificate of service indicate.

Petitioner respectfully requests the clerk or the Court determine whether the Office of Special Counsel was properly served on December 6, 2006 or if he needs to re-serve the documents with a summons.

mcbarnette_andrea, 01:21 AM 12/22/2006, declaration of service

Petitioner has executed an declaration about his service of the documents cited in the Show Cause Order of November 8, 2006, it is attached.

Respectfully Submitted,

Joseph P. Carson, P.E., Petitioner
10953 Twin Harbor Dr
Knoxville, TN 37934
865-300-5831

## Declaration

I declare under the penalty of perjury under the laws of the United States of America that the information contained in the Certificate of Service, dated December 6, 2006, about the service of the documents cited in the Show Cause Order of November 8, 2006 for Carson v. Office of Special Counsel, Docket no. 06-1833 is true and correct.

Executed on: December 22, 2006

Joseph P. Carson
10953 Twin Harbour Drive
Knoxville, TN 37934

## Certificate of Service

I certify that the Declaration of Service, without attachments, except for the declaration, was served, by first class mail, on:

Rudolph Contreas
Chief, Civil Division
U.S. Department of Justice
Judiciary Center
555 Fourth Street, NW
Washington, DC 20530

Joseph Carson

December 22, 2006

November 18, 2006

President George Bush
The White House
1600 Pennsylvania Avenue
Washington, DC 20500
<president@whitehouse.gov>

Re: Basis in law and fact to allege neglect of duty and/or malfeasance in office on part of U.S. Office of Special Counsel (OSC) Special Counsel Scott Bloch, U.S. Merit Systems Protection Board (MSPB) Chairman Neil McPhie, Vice Chair Mary Rose, and Member Barbara Sapin.

Dear President Bush,

I respectfully contend, based on an incontestable basis in law and fact, that neglect of duty and/or malfeasance in office on the part of the aforementioned individuals, places America at increased and unnecessary risk of a nuclear 9/11 or other catastrophic terrorist attack(s).

By the law at 5 USC 1211(b) and 1202(d), you have the power to remove these individuals from office on this basis, and I earnestly hope you will choose to do so.

The basis in law for this request includes 5 USC 1201 (appendix, citing the findings and purpose statement of the Federal Whistleblower Protection Act (WPA) of 1989) and 5 USC 1204(a)(3).

By these sections of the law:

- "the protection of individuals who are the subject of prohibited personnel practices (PPP's) remains the paramount consideration,"
- OSC shall "act in the interests" of those who seek its protection from PPP's,
- MSPB and OSC are responsible for implementing the law's mandate "that employees should not suffer adverse consequences of a result of PPP's," and
- MSPB shall "report to the President and Congress as to whether the public interest in a civil service free of PPP's is being adequately protected."

As a result of his neglect of duty and/or malfeasance in office, OSC, under Special Counsel Bloch, continues to fail its statutory obligations to protect from PPP's those who seek its protection, thereby putting the merit system principles for the entire federal civil service at risk.

As a result of their neglect of duty and/or malfeasance in office, MSPB, under its current three person Board, continues to fail to identify and report to you and Congress that due to OSC's (and, to a lesser extent, its) failures, "the public interest in a civil service free of PPP's" is not being adequately protected.

Ex/   S-  1

The context of my making these allegations includes my having prevailed in no fewer than 8 separate whistleblower-related decisions at the MSPB since 1994, while OSC has failed to once determine and report, in over 20 related PPP complaints, that "there are reasonable grounds to believe a PPP has occurred, exists, or is to be taken."

The Department of Energy (DOE) where I, a licensed professional engineer (P.E.), am employed as a nuclear safety engineer, singled me out for reprisal, to punish me and intimidate others into silence, for my doing my "doubly sworn duty" as a P.E. and federal employee to "blow whistles" when necessary to protect public health and safety. OSC did not single me out in failing to comply with its statutory duties to protect me, its systemic and persistent lawbreaking failure to protect federal employees from PPP's contributed to 9/11, the failure of levees in New Orleans, the loss of space shuttle Columbia, as well as countless other instances of malfeasance or incompetence in federal governance since the 1989 enactment of the WPA.

Approximately 25,000 federal employees have alleged about 50,000 specific PPP's in PPP complaints to OSC since 1989, according to OSC's Annual Reports to Congress. Even though the law is clear (it has also obtained explicit judicial review) that OSC is to investigate PPP's complaints to extent necessary to determine whether there is reasonable grounds to believe a PPP occurred and, if so, report it to MSPB, the involved agency, and OPM, this has not happened and is still not happening.

Because of neglect of duty and/or malfeasance in office by the current Special Counsel, as his predecessors, OSC does not make and/or report its PPP determinations. This prevents heads of agencies from complying with their statutory duty to "prevent PPP's" in their agencies (see 5 USC 2320(c)). No one knows exactly how many positive (or negative) PPP determinations OSC has made - OSC does not properly report either. That is the incontestable record since 1989.

Because of neglect of duty and/or malfeasance in office by the current Board members of the MSPB, as their predecessors, it has not identified and reported OSC's failure to protect federal employees from PPP's, by its not making and reporting its statutory required PPP determinations. That is the incontestable record since 1989.

I, with my family, have risked, sacrificed, and suffered much to comply with my "doubly sworn duty" as a P.E. and federal employee to "blow whistles" when required by the rules of professional conduct of my licensing board. Special Counsel Bloch, MSPB Chairman McPhie and MSPB Member Sapin are licensed attorneys - they each have a "doubly sworn duty" as licensed attorneys and federal employees to "blow whistles" when required by the rules of professional conduct of their licensing boards. They, as their predecessors, have failed to do their "doubly sworn duty" to "blow whistles," as positively required about OSC's and MSPB's lawbreaking failure to comply with their responsibilities to protect federal employees from PPP's. This has resulted in "meltdown" in legal ethics at OSC, and, to a lesser degree, MSPB.

With America at war with terror, this meltdown of legal ethics imperils us all, because many

$5-$

2

federal employees who seek OSC's protection from PPP's are in the front lines of that war. When they go down, professionally, after OSC fails to protect them, their colleagues in those front lines of the war on terror get the clear message - think of yourself first.

As you know, governmental corruption is a major obstacle (if not the major obstacle) to a desirable outcome in the Iraq war. As your Administration has recognized, governmental corruption is a major obstacle to the development of freedom and democracy in many regions of the world. And here in America, neglect of duty or malfeasance in office by licensed attorneys in OSC and MSPB imperil civil servants on the front lines in the war on terror and enable significant governmental corruption.

You do not have the power to get to the bottom of corruption in Iraq or in other Countries, but you do have the power to determine (including requesting Congressional oversight) that my allegations of a meltdown in legal ethics at OSC and MSPB are accurate and then take appropriate action by removing, for cause, the individuals at the top of those organizations.

The attached documents outline the incontestable basis of my claims, provide internet and other citations to the largely public documents upon which they are based, and pose questions of the type MSPB should have starting asking of OSC in 1989.

Respectfully,


Joe Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN 37934
865-300-5831

3

**Conclusive proof of a "meltdown" in legal ethics at U.S. Office of Special Counsel (OSC), implicating possibly hundreds of attorneys**

OSC was created as an independent executive branch agency by federal Whistleblower Protection Act (WPA) of 1989 (P.L. 101-12) for the primary purpose of protecting federal employees from prohibited personnel practices (PPP's), particularly whistleblower reprisal. By the WPA, OSC is to "act in the interest" of those who seek its protection. OSC has jurisdiction over almost all civilian federal employees in almost all federal agencies - including many of those in the front lines of the war on terror.

It has about 100 employees, about 30% of whom are licensed attorneys, according to a lawyer directory. The law (5 U.S.C. 1214) detailing OSC and its attorneys duties to those who seek its and their protection was last amended in 1994 by P.L. 103-464.

There has been only one published court review of any aspects of OSC's statutory obligations to those who seek its protection since passage of the WPA in 1989. In Weber v. Department of Army, 209 F.3d 756 (D.C. Cir. 2000), the court specifically addressed OSC's responsibilities to formally report all its positive PPP determinations.

From Weber, page 758 (emphasis added):

> An employee who believes he has been a victim of a prohibited personnel practice must first complaint to the OSC, which is required to investigate the complaint "to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." 5 U.S.C. 1214. If the OSC determines that a prohibited personnel practice has occurred, it **must report** its findings to the Merit Systems Protection Board (MSPB), and it **may petition** the Board to take action on behalf of the employee.

OSC and its licensed attorneys statutory obligations to those who seek its and their protection include:

1) To investigate PPP's complaints to extent necessary to determine if there are reasonable grounds to believe a PPP has occurred, exists, or is to be taken (see 5 USC 1214(a)(1)(A)).

2) To make a determination whether there are reasonable grounds to believe a PPP has occurred, exists, or is to be taken (1214(b)(2)(A)).

3) To formally report its negative PPP determinations to the complainant, with a detailed explanation of the basis in law and fact for its determination and inform the complainant who is available, by phone, to answer reasonable questions about its findings and determination (1214(a)(1)(D), (a)(2)(A), and "termination statement" of the appendix of 1214).

4

4) To formally report its positive PPP determinations to the involved agency, the Merit System Protection Board (MSPB), and Office of Personnel Management (1214(b)(2)(B) and <u>Weber</u>, page 758).

According to OSC's Annual Reports to Congress for FY 2002-2004, OSC dispositioned 5529 PPP complaints and obtained "favorable action" in 255 of them, according to table 1 on page 7 and table 3 on page 11 . (It should be noted that OSC's Annual Reports to Congress prior to 2003 also indicated the total number of specific PPP's alleged in the PPP complaints it received each year. Based on earlier OSC Annual Reports to Congress, the average PPP complaint alleges between two and three specific PPP's (also see endnote 9 on page 30 of 2004 report). Consistent with many PPP complaints alleging multiple specific PPP's, OSC claims to have obtained 321 specific "favorable actions" in the 255 cases in which it obtained favorable actions.)

However, according a September 25, 2006 letter of Neil McPhie, the Chairman of MSPB, its records for FY 2002 - 2004 indicate that OSC did not make a single positive PPP determination in that time. Chairman McPhie's letter is consistent with the public records maintained at OSC, per 5 USC 1219, which indicate that OSC has not made a single positive PPP determination report (or report of any other violation of law, rule or regulation) per 5 USC 1214(e) since being created in 1989.

OSC's claims in its annual reports about obtaining "favorable actions" are largely unverifiable, because of its failure to formally report all its positive PPP determinations, contrary to its statutory obligations.  It is entirely possible that OSC made hundreds or thousands of unreported positive PPP determinations during FY 2002-2004 and then did nothing to protect the affected employee, including not even informing them of its positive PPP determination so they might have a better chance to obtain redress via an independent right of action (IRA) appeal to MSPB.

## Conclusion

Contrary to its statutory obligations, OSC does not usually report its statutory required PPP determinations to the complainant, instead it reports its discretionary determination not to seek relief on the complainant's behalf at MSPB, a determination it may make even when it makes a positive PPP determination as described in <u>Weber</u>.

Therefore, it is possible that OSC has made thousands of positive PPP determinations in the approximately 50,000 specific PPP allegations it has investigated since 1989 without informing anyone - not the complainant, the agency, MSPB, or OPM - despite its statutory obligation to do so. Additionally, because OSC does not include the statutory required "termination statement" in its PPP termination letters and does not provide additional information about its findings and determination if requested, it is possible that hundreds or thousands of federal employees were unable to make informed decisions about seeking additional redress, because OSC failed to protect them as required by law.

$\int$— 5

## References on the internet

1.  Office of Special Counsel <http://www.osc.gov>

2.  "Findings and Purpose" statement of WPA, found at 5 USC 1201 appendix
    <http://whsknox.blogs.com/misconduct_exh/19.pdf>

3.  Martindale online lawyer director, advanced search:
    <http://www.martindale.com/xp/Martindale/Lawyer_Locator/search_advanced.xml>. In
    "drop down list" for "search for" field, select "government" and put "Office of Special
    Counsel" in search field for agency.

4.  Weber v. Department of Army, 209 F.3d 756, 758 (D.C. Cir. 2000)
    <http://whsknox.blogs.com/misconduct_exh/03.pdf>.

5.  5 U.S.C. 1214 <http://whsknox.blogs.com/carson_v_osc/5_USC_1214.htm>.

6.  2004 OSC Annual Report to Congress
    <http://www.osc.gov/documents/reports/ar-2004.pdf>

7.  MSPB Chairman Neil McPhie letter of September 25, 2006
    <http://whsknox.blogs.com/misconduct_exh/02.pdf>.

8.  Public record of "list of matters" reported by OSC to agencies, per 5 USC 1219 for 1989
    through 2004, showing no 1214(e) reports were made
    <http://whsknox.blogs.com/carson_v_osc/OSC_1219_list_of_matters.pdf>.

9.  Page 12 of Senate Report 103-358 which describes the purpose of the "termination
    statement" in protecting those who seek OSC's protection.
    <http://whsknox.blogs.com/misconduct_exh/11.pdf>

10. Critique of OSC's Annual Reports to Congress, citing their systemic and persistent non-
    compliance with the relevant statute, 5 USC 1218. OSC hides its lawbreaking failure to
    protect those who seek its protection by failing to report required (and incriminating)
    information in its Annual Reports to Congress.
    <http://whsknox.blogs.com/carson_v_osc/5usc1218_July06.pdf>

5 - 6

**A suggested list of questions, intended to dispel or substantiate the "meltdown" in legal ethics at OSC, includes:**

1) How many specific PPP's allegations were contained in the 5529 PPP complaints OSC dispositioned in FY 2002 - 2004?

2) Of these, in how many were positive PPP determinations made?

3) Of these, in how many were negative PPP determinations made?

4) If the numbers do not add up, what is the explanation for the discrepancy?

5) How can OSC claim to have obtained 321 "favorable actions" in 255 cases without its making a single positive PPP determination during FY 2002-2004?

6) Do OSC PPP investigation termination letters contain the required "termination notice" of 5 USC 1214 (appendix)?  If not, why not?

7)   Does OSC provide the information described in the "termination statement," by phone, when requested by the complainant?  If not, why not?

8) Do OSC's PPP termination letters report OSC's statutory required PPP determination or only OSC's discretionary determination about seeking corrective action on behalf of the complainant at MSPB?

9) How can the heads of agencies comply with their statutory obligations to "prevent PPP's" in their agencies (see 5 USC 2302(c)), if OSC does not formally report all its positive PPP determinations?

10) How can the information required by the No FEAR act (see 5 USC 2301 appendix) be compiled if OSC does not formally report all its positive PPP determinations?

11) Do OSC's licensed attorneys, whose professional responsibilities include protecting, as required by law, those who seek OSC's protection, have a positive legal and professional responsibility as licensed attorneys and federal employees, to "blow whistles," about OSC and its attorneys failure to comply with those statutory obligations?

12) Approximately how licenced attorneys have been employed at OSC since 1989?

13) Have any of OSC's attorneys formally reported concerns about OSC's compliance with its statutory duties to protect those who seek it and their protection?  If so, what resulted?

5 - 7

**A suggested list of questions for a Congressional request for information of U.S. Merit Systems Protection Board (MSPB), made per 5 USC 1205**

1.  When and how often since 1994 has MSPB complied with its statutory obligation, per 5 USC 1204(a)(3), to "report to the President and to the Congress as to whether the public interest in a civil service free of PPP's is being adequately protected."

2.  Does MSPB know, for each year since 1994, how many PPP's occurred, of which type, and in which agencies, based on its or OSC's determination? If not, why not and how can it make its statutory required reports about PPP's without such information?

3.  How many times has MSPB recommended or determined agency non-compliance with MSPB enforceable settlement agreements or MSPB Orders of Corrective Action since 1994? Are these MSPB recommendations or determinations referred to OSC for investigation for possible disciplinary action? If not, why not?

4.  If an agency fails to comply with an MSPB enforceable settlement agreement or an MSPB order of corrective action, does or can a 5 USC 2302(b)(9) type PPP - reprisal for engaging in protected activity - occur? If so, has MSPB or OSC ever made such a determination?

5.  Does MSPB refer to OSC for investigation for possible disciplinary action all its determinations that (b)(2) to (b)(12) PPP's occurred, or only (b)(8) ones? If not, why not?

6.  Why is the evidentiary standard - "substantial likelihood" - found in MSPB regulations at 5 CFR 1209 for whistleblower stays greater than the statutory established evidentiary standard - "reasonable grounds to believe" - for OSC stay requests made per 5 USC 1214(b)(1)? Does the law allow MSPB to use "reasonable grounds to believe" as its evidentiary standard for whistleblower stays?

7.  How many whistleblower stays have been sought and how many granted per 5 USC 1221 since 1994? In how many cases, after MSPB denied the stay, did the employee obtain relief as a result of his whistleblower appeal? In how many cases, after MSPB granted the stay, did the employee fail to obtain relief?

8.  Has MSPB conducted a special study about the 1994 amendment to the WPA, which added "any other significant change to duties, responsibilities, or working conditions" to the list of "personnel actions" to determine whether this significant change impacted "whether the public interest in a civil service free of PPP's is being adequately protected"?

5-   8

Garwin, Art, 05:56 PM 12/16/2006, RE: article idea?
Page 1 of 2
Case 1:06-cv-01833-PLF    Document 12-2    Filed 01/05/2007    Page 17 of 22

Subject: RE: article idea?
Date: Sat, 16 Dec 2006 16:56:07 -0600
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
Thread-Topic: article idea?
Thread-Index: AcchVA4wzgRjuKyATT6aN0UBbc0M2QAEVElZ
From: "Garwin, Art" <AGarwin@staff.abanet.org>
To: "Joe Carson" <jpcarson@tds.net>
X-NAS-BWL: Found match for 'AGarwin@staff.abanet.org' on the allowed list (66 addresses, 0 domains)
X-NAS-Classification: 0
X-NAS-MessageID: 162
X-NAS-Validation: {06839354-2FE7-47BB-BACC-979F63027F59}

Thanks for the note.  It sounds very interesting, and I expect would be a new area of discussion to a lot of readers.  I certainly would be interested in receiving something.

---

**From:** Joe Carson [mailto:jpcarson@tds.net]
**Sent:** Sat 12/16/2006 2:51 PM
**To:** Garwin, Art
**Subject:** article idea?

Dear Mr. Garwin,

I am interested to writing and submitting an article related to the ethical duties of attorneys involved with the U.S. Office of Special Counsel's (OSC) implementation of its statutory duties to protect federal employees from "protected personnel practices" (PPPs), particularly whistleblower reprisal.  This would include attorneys employed at OSC and attorneys who represent clients while they are seeking or after they have sought OSC's protection from PPPs.

OSC has a unique mission in federal gov't, if not all gov't agencies in US - to protect federal employees from PPPs, including "acting in the interest" of those who seek its protection.  So OSC attorneys are somewhat like public defenders - paid by gov't to act in interest of individuals who seek OSC's protection, even though a attorney-client relationship does not exist between OSC attorneys and federal employees who seek OSC's protection from PPPs.

The focus would be on their positive duty to "blow whistles" on any OSC noncompliance with its statutory duties to protect those who seek its protection and to "blow whistles" on the associated misconduct of involved attorneys.

OSC is charged to protect many federal employees who are on "front lines" of war on terror, so the consequences of OSC lawbreaking, enabled by involved attorneys not "blowing whistles" on it, can be catastrophic.

I have raised these issues/questions to a number of attorneys, but have not gotten any clear answers, so it appears to be an unexplored area of legal ethics, with significant import.

What do you think?  I'm trying to get some "whistleblowing" attorneys to co-author the piece, to increase its credibility and chances of being published and being published sooner.  Your feedback may be

Ex 6-1

Garwin, Art, 05:56 PM 12/16/2006, RE: article idea?                                    Page 2 of 2

Case 1:06-cv-01833-PLF     Document 12-2     Filed 01/05/2007     Page 18 of 22

influential in these efforts.  I think the article would be about
2500 words, maybe less.

Respectfully,

Joe Carson, P.E.
Knoxville, TN
865-300-5831
>To: Joseph P Carson  <jpcarson@TDS.NET>
>Date: Fri, 15 Dec 2006 12:03:34 -0600 (CST)
>From: ABA Center for Professional Responsibility <cpr@abanet.org>
>Subject: The Professional Lawyer
>X-NAS-BWL: No match found for 'cpr@abanet.org' (56 addresses, 0 domains)
>X-NAS-Language: English
>X-NAS-Bayes: #0: 0; #1: 1
>X-NAS-Classification: 0
>X-NAS-MessageID: 124
>X-NAS-Validation: {06839354-2FE7-47BB-BACC-979F63027F59}
>
>Dear Center for Professional Responsibility Members:
>
>The Professional Lawyer magazine continues to expand its coverage to
>keep readers current on a broad range of professional responsibility
>issues, programs and developments related to ethics,
>professionalism, regulation and competence. The insights and
>opinions of Center members are a valuable resource to our readers.
>We invite you to submit topical articles between 800 and 8000 words.
>Past issues are posted on the Center Members-Only Web page
>(http://www.abanet.org/cpr/about/membersonly.html). For more
>information, or to discuss ideas for possible articles, contact Art
>Garwin at (312) 988-5294 or agarwin@staff.abanet.org.
>
>ABA Center for Professional Responsibility, cpr@abanet.org
>
>----------
>
>Your e-mail address will only be used within the ABA and its
>entities. We do not sell or rent e-mail addresses to anyone outside the ABA.
>
>To change your e-mail address or remove your name from any future
>general distribution e-mails you can call us at 1-800-285-2221, or
>write to: American Bar Association, Service Center, 321 N Clark
>Street, Floor 16, Chicago, IL 60610
>
>If you are an ABA member, log in to the ABA Web site at
>http://www.abanet.org/abanet/common/MyABA/home.cfm to edit your
>member profile. Otherwise, complete the form located at
>https://www.abanet.org/members/join/coa2.html
>
>To review our privacy statement, go to
>http://www.abanet.org/privacy_statement.html.

6-2

（）



**U.S. Office of Special Counsel**
1730 M Street, N.W., Suite 201
Washington, D.C. 20036 -4505

# U.S. OFFICE OF SPECIAL COUNSEL ANNOUNCES FAVORABLE SETTLEMENT OF PROHIBITED PERSONNEL PRACTICE COMPLAINT FILED BY MSPB REGIONAL DIRECTOR

FOR IMMEDIATE RELEASE - 1/3/02
CONTACT: JANE MCFARLAND
(202) 653-7984

Today, the U.S. Office of Special Counsel (OSC) announced the favorable settlement of a prohibited personnel practice complaint filed by Mr. Thomas J. Lanphear, Director and Chief Administrative Judge of the Atlanta Regional Office of the U.S. Merit Systems Protection Board (MSPB). Mr. Lanphear had filed a complaint with OSC, alleging that senior MSPB officials, who are no longer with the agency, retaliated against him for challenging the rating that he had received on a 1997 performance evaluation.

Mr. Lanphear alleged that after he filed an appeal challenging his 1997 evaluation, his supervisors orchestrated a series of actions and investigations against him. Mr. Lanphear alleged that the actions were designed to justify the deficient performance rating and to block his recertification as a member of the Senior Executive Service (SES). These actions included re-issuing his 1997 performance appraisal and changing his rating to "Unsatisfactory" and issuing a 1998 appraisal with an "Unsatisfactory" rating.

OSC conducted an investigation into Mr. Lanphear's allegations. On the basis of OSC's investigation, the Special Counsel determined that there were reasonable grounds to believe that Mr. Lanphear's supervisor had retaliated against him because he challenged the rating on his performance evaluation. OSC provided a draft prohibited personnel practice report to former MSPB Chairman Beth Slavet and requested that the MSPB voluntarily provide corrective action to Mr. Lanphear.

In response to OSC's draft report and under the terms of the settlement agreement, the MSPB agreed to provide full relief to Mr. Lanphear without admitting liability. Relief included rescinding Mr. Lanphear's 1997 and 1998 performance evaluations and issuing "Outstanding" ratings for 1997, 1998, and 1999, which resulted in Mr. Lanphear being recertified to the SES. Relief also included the payment of performance awards associated with the revised performance appraisals and attorney's fees.

The MSPB is the tribunal before which OSC prosecutes prohibited personnel practice cases. All of the underlying events took place under an administration prior to that of Chairman Slavet.
Special Counsel Elaine Kaplan thanked the MSPB "for its cooperation in negotiating a full and fair settlement of Mr. Lanphear's complaint." Jessica L. Parks of Kator, Parks & Weiser,

*Ex/7-/*

Printed for Joe Carson <jpcarson@mindspring.com>                    12/29/2006

counsel for Mr. Lanphear, stated, "The case exemplifies the importance of having an independent watch dog agency such as the Special Counsel to protect the rights of federal employees."

It is a prohibited personnel practice under 5 U.S.C. § 2302(b)(9) to retaliate against an employee for exercising any appeal, complaint, or grievance right granted by any law, rule, or regulation. The act of rating an employee's performance negatively because the employee exercised such a right constitutes a prohibited personnel practice.

*** 

12/29/2006



# U.S. MERIT SYSTEMS PROTECTION BOARD

**Office of the Chairman**
1615 M Street, NW
Washington, DC 20419-0002

Phone: (800) 209-8960; Fax: (202) 653-7130; E-Mail: mspb@mspb.gov

**Chairman**

SEP 25 2006

Joe Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN 37934

Dear Mr. Carson:

I have received your appeal of the Clerk of the Board's determination that the Board has no records responsive to your request for Office of Special Counsel (OSC) reports filed pursuant to 5 U.S.C. § 1214(b)(2)(B) for the years 2002, 2003, and 2004. As the Clerk of the Board explained, the Board does not have copies of such reports. Accordingly, it is not possible to comply with your request for these documents.

In your appeal you also state that you requested OSC reports filed pursuant to 5 U.S.C. § 1214(b)(2)(D) for the years 2002, 2003, and 2004. Additionally, you requested a statement that the Board "has no record, since 1989, of receiving a 1214(b)(2)(B) or 1214(b)(2)(D) report from OSC." We have treated this request as an amended request for OSC reports for the period 1989 through the present. Pursuant to the Board's records disposition schedule, records of the type you requested are destroyed after 5 years. Accordingly, for the years 1989 through 2001, the Board has no copies of OSC reports filed pursuant to 5 U.S.C. §§ 1214(b)(2)(B) and 1214(b)(2)(D). For the period 2002 to the present, the Board was unable to locate any OSC reports filed pursuant to 5 U.S.C. § 1214(b)(2)(D). The Board did, however, locate three OSC reports filed pursuant to 5 U.S.C. § 1214(b)(2)(B) and dated July 6, 2005, May 1, 2006, and May 24, 2006. Because these reports originated with OSC, we are referring your request to OSC for a response to you. *See* 5 C.F.R. § 1204.15.

This is the Board's final decision in your FOIA appeal. You have the right to seek judicial review of this decision in an appropriate United States district court pursuant to 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Neil A. G. McPhie

cc:    Scott J. Bloch, Special Counsel

Exh 27
8-1

## **Certificate of Service**

I certify that the following documents for <u>Carson v. Office of Special Counsel,</u> docket no. 06-1833:

1.    Objection to aspects of order of December 29, 2006, granting enlargement of time with its exhibits

was served, via U.S. Mail, on

Representative for OSC

US DOJ
Attention: Judith Kidwell
555 Fourth St, NW
Room E4905
Washington, DC 20530

_____
Joseph P. Carson

December 30, 2006

RECEIVED

JAN 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

9