Index to Exhibits for Opposition to Motion to Dismiss Petition for Writ of
Mandamus

1.    Case summary report for OSC file no. MA-93-0151, provided as exhibit 1
      to the motion to dismiss petition for writ of mandamus in <u>Carson v. OSC</u>,
      docket no. 04-315, docket item no. 29.

2.    January 2002 OSC press release about a PPP settlement involving a senior
      MSPB administrative judge, citing a "draft" positive PPP determination.

3.    Cited pages of transcript from the motion hearing of June 20, 2006 in
      <u>Carson v. OSC</u>, docket no. 05-537,(docket report item no. 65)

4.    OSC 2004 Annual Report to Congress, table 1 on page 7, table 3 on page
      11, and  endnote 9 on page 30

5.    September 25, 2006 letter of Neil McPhie, the Chairman of MSPB in
      response to petitioner's FOIA appeal

6.    Index of "list of matters" maintained by OSC as a public record, per 5 USC
      1219.  Its review indicates no 5 USC 1214(e) determinations have been
      made at OSC from 1989 through 2004.

7.    Page 12 of Senate Report 103-358 which  describes the purpose of the
      "TERMINATION STATEMENT"

8.    Declaration of Petitioner about his efforts to obtain the information
      described in the "TERMINATION STATEMENT" for the PPP complaints
      in this case.

9.    Letters petitioner has sent OSC to obtain the information described in the
      "TERMINATION STATEMENT" for the PPP complaints in this case.

10.   MSPB appeal form, on page 7

11.   MSPB jurisdictional order of October 20, 2006, for <u>Carson v. Department of
      Energy</u>, docket no. AT-1221-06-1125-W-1.

# Case Profile Report

Time: 10:59:10

Date: December 09, 2004

File Number: MA-93-0151          File Name: CARSON

Status: D

Action Office: Record Management Service

Age: 0 days

| Days In: | CEU | ADR | Investigation |
|---|---|---|---|

| Name | Type |
|---|---|
| Mr. JOSEPH P CARSON<br>10953 Twin Harbour Drive<br>Knoxville, TN 37922 | COMPLAINANT (EMPLOYEE) |
| ▬▬▬▬▬<br>DEPT OF ENERGY,OAK RIDGE ,REGIONAL OFFICE | SUBJECT |
| Hon. JOHN J DUNCAN<br>115 CANNON HOUSE OFC BLDG<br>WASHINGTON, DC 20515 | CONGRESSIONAL - H OF REP |

Type of Matter/Case: Prohibited personnel practice including reprisal for Whistleblowing
Received: 10/23/1992          240th Day: **/**/**
Agency: Department of Energy
Installation: OAK RIDGE REGIONAL OFC KNOXVIL          State where violation occurred: TN
Complainant's Pay Schedule: GS          Series: 801          Grade: 14

| Attorney | Mediator | CEU Analyst | Investigator |
|---|---|---|---|
| SCHULZ, Cathleen<br>CONSTANTINE, Pete<br>EDDY, R | | Fields-Williams, Audre | Greenwell, Francis |

Current Assignee: Pete CONSTANTINE
Required Letters:          90 Day Letter Due: 02/08/1993          60 Day Letter Due: 12/07/1993
Personnel Actions: disciplinary or corrective action - Chapter 75
Personnel Actions: disciplinary or corrective action - Chapter 75
Personnel Actions: performance evaluation - Chapter 43
Personnel Actions: performance evaluation - Chapter 43

## Related Cases

FO040810  CARSON |

## Allegations

EXHIBIT

1-1

Case Profile Report
File Number: MA-93-0151, page 2

| Allegations | |
|---|---|
| Allegation | REPRISAL FOR WHISTLEBLOWING (WBPA'89) |
| Identified | INCLUDED WITH INFORMATION RECEIVED INITIALLY |
| Investigative Findings | IDENTIFIED DURING INVESTIGATION |
| Initial Disposition | REFERRED FOR INVESTIGATION/REPORT |
| Disposition | INSUFFICIENT EVIDENCE FOR FURTHER ACTION |
| Allegation | REPRISAL FOR APPEAL (WBPA) |
| Identified | INCLUDED WITH INFORMATION RECEIVED INITIALLY |
| Investigative Findings | IDENTIFIED DURING INVESTIGATION |
| Initial Disposition | REFERRED FOR INVESTIGATION/REPORT |
| Disposition | INSUFFICIENT EVIDENCE FOR FURTHER ACTION |

## Corrective Actions

| Action Date | Action Code | Action Description | Corr. Date | User ID | Date captured |
|---|---|---|---|---|---|
| 10/23/1992 | 200 | 2302(b)(8) allegation received | | mlm ceu | 11/16/1992 |
| 11/03/1992 | 999 | matter docketed | 10/23/1992 | dcr dc | 11/03/1992 |
| 11/10/1992 | 101 | Acknowledgement letter sent | | mlm ceu | 11/24/1992 |
| 11/16/1992 | 210 | operant personnel action date entered | | mlm ceu | 11/16/1992 |
| 11/16/1992 | 954 | CEU analyst assigned | | mlm ceu | 11/16/1992 |
| 12/23/1992 | 966 | Personnel action codes entered | | coa pd | 12/24/1992 |
| 12/23/1992 | 966 | Personnel action codes entered | | coa pd | 12/30/1992 |
| 12/23/1992 | 611 | referred for investigation | | coa pd | 12/24/1992 |
| 01/05/1993 | 952 | Case assigned to an investigator | | ruthid | 01/05/1993 |
| 02/08/1993 | 670 | 90 day letter sent | | ruthid | 03/29/1993 |
| 04/09/1993 | 671 | 60 day letter sent | | ruthid | 04/08/1993 |
| 05/07/1993 | 753 | Report of Investigation approved | | ruthid | 05/10/1993 |
| 06/08/1993 | 671 | 60 day letter sent | | coa pd | 06/11/1993 |
| 06/22/1993 | 951 | Case reassigned to another attorney | | coa pd | 06/22/1993 |
| 08/09/1993 | 671 | 60 day letter sent | | coa pd | 09/01/1993 |
| 08/13/1993 | 609 | Prosecution recommendation submitted to IOSC | | coa pd | 08/13/1993 |
| 10/08/1993 | 671 | 60 day letter sent | | coa pd | 10/08/1993 |
| 10/26/1993 | 240 | 2302(b)(8) allegation closed | | coa pd | 10/26/1993 |
| 10/26/1993 | 220 | b8 right to sue letter sent | | coa pd | 10/26/1993 |
| 10/26/1993 | CLS | Closed | | adr dc | 10/27/1993 |
| 10/26/1993 | 987 | Closed file folder charged out | | adr dc | 10/27/1993 |
| 11/17/1993 | 735 | request to reopen case | 11/09/1993 | oam dc | 11/18/1993 |
| 11/29/1993 | 109 | received request for status of case | | oam dc | 12/01/1993 |
| 12/01/1993 | 988 | Closed file returned to OSC | | adr dc | 12/02/1993 |

/-2



**U.S. Office of Special Counsel**
1730 M Street, N.W., Suite 201
Washington, D.C. 20036 -4505

## U.S. OFFICE OF SPECIAL COUNSEL ANNOUNCES FAVORABLE SETTLEMENT OF PROHIBITED PERSONNEL PRACTICE COMPLAINT FILED BY MSPB REGIONAL DIRECTOR

FOR IMMEDIATE RELEASE - 1/3/02
CONTACT: JANE MCFARLAND
(202) 653-7984

Today, the U.S. Office of Special Counsel (OSC) announced the favorable settlement of a prohibited personnel practice complaint filed by Mr. Thomas J. Lanphear, Director and Chief Administrative Judge of the Atlanta Regional Office of the U.S. Merit Systems Protection Board (MSPB). Mr. Lanphear had filed a complaint with OSC, alleging that senior MSPB officials, who are no longer with the agency, retaliated against him for challenging the rating that he had received on a 1997 performance evaluation.

Mr. Lanphear alleged that after he filed an appeal challenging his 1997 evaluation, his supervisors orchestrated a series of actions and investigations against him. Mr. Lanphear alleged that the actions were designed to justify the deficient performance rating and to block his recertification as a member of the Senior Executive Service (SES). These actions included re-issuing his 1997 performance appraisal and changing his rating to "Unsatisfactory" and issuing a 1998 appraisal with an "Unsatisfactory" rating.

OSC conducted an investigation into Mr. Lanphear's allegations. On the basis of OSC's investigation, the Special Counsel determined that there were reasonable grounds to believe that Mr. Lanphear's supervisor had retaliated against him because he challenged the rating on his performance evaluation. OSC provided a draft prohibited personnel practice report to former MSPB Chairman Beth Slavet and requested that the MSPB voluntarily provide corrective action to Mr. Lanphear.

In response to OSC's draft report and under the terms of the settlement agreement, the MSPB agreed to provide full relief to Mr. Lanphear without admitting liability. Relief included rescinding Mr. Lanphear's 1997 and 1998 performance evaluations and issuing "Outstanding" ratings for 1997, 1998, and 1999, which resulted in Mr. Lanphear being recertified to the SES. Relief also included the payment of performance awards associated with the revised performance appraisals and attorney's fees.

The MSPB is the tribunal before which OSC prosecutes prohibited personnel practice cases. All of the underlying events took place under an administration prior to that of Chairman Slavet.
Special Counsel Elaine Kaplan thanked the MSPB "for its cooperation in negotiating a full and fair settlement of Mr. Lanphear's complaint." Jessica L. Parks of Kator, Parks & Weiser,

*Ex/2-1*

counsel for Mr. Lanphear, stated, "The case exemplifies the importance of having an independent watch dog agency such as the Special Counsel to protect the rights of federal employees."

It is a prohibited personnel practice under 5 U.S.C. § 2302(b)(9) to retaliate against an employee for exercising any appeal, complaint, or grievance right granted by any law, rule, or regulation. The act of rating an employee's performance negatively because the employee exercised such a right constitutes a prohibited personnel practice.

***

12/29/2006

*Transcript 6/20/06 docket 05-557*

*Carson V. OSC*

19

1    This case, in large part, depends upon the

2  meaning of 1214(e) and how it works into the framework, the

3  statutory framework that OSC has to use or is to use in

4  protecting federal employees from prohibited personnel

5  practices.  And from my review of the law and related

6  documentation, I think OSC's statutory obligations to

7  protect federal employees are very straightforward.

8    One, they must investigate the PPP complaints to

9  the extent necessary to determine whether there are

10  reasonable grounds to believe a PPP has occurred, exists or

11  is to be taken.

12    Two, it has to make a determination whether it

13  did of its conclusions kind of, I'm belaboring the point.

14  It has to formally determine, "Yes, we believe there are

15  reasonable grounds to believe a PPP has occurred, exists,

16  or is to be taken," or, "No, we have determined there are

17  not reasonable grounds to believe."

18    It has to make that determination and then, in

19  the case of a positive determination, it has to report it

20  to the agency as well as to the employee.  And in reporting

21  it to the agency it has two options.  It can report it per

22  1214(e), in which case the agency head is then by law

23  charged to respond that he -- the agency head is charged to

24  respond to OSC, certifying that he has reviewed the OSC

25  report containing the positive prohibited personnel

*Exh 3-1*

1  practice determination, and respond with the actions taken

2  or planned with a deadline to respond to the positive

3  prohibited personnel practice determination by OSC.

4        Now, OSC can, in its prosecutorial discretion,

5  make an alternative report to the 1214(e) report, and that

6  is a report that is described at 1214(b)(2)(B), in which

7  case it's making a report for the purpose of establishing

8  jurisdiction at the Merit System Protection Board to seek

9  corrective action in a sense to enforce its recommendations

10  if the agency does not promptly adopt them.

11        THE MAGISTRATE JUDGE:  Mr. Carson, one of the

12  arguments that you make is that the OSC was not permitted

13  to request multiple extensions of time.  On what authority

14  do you rely for that claim?

15        MR. CARSON:  I rely upon -- it's 1214, I believe

16  it's (b)(2)(A).  In which it describes the law -- and this

17  law was added in 1994, it was not part of the original

18  Whistleblower Protection Act, but it was added specifically

19  because federal employees were complaining that OSC was

20  taking years or too long to report its -- complete its

21  investigation, report its determinations.

22        So Congress imposed a 240-day limit, and then

23  gave the possibility to request an extension, and what the

24  law says is that -- I'm quoting the law, "The

25  determination, if OSC has failed to make its determination

3-2

1          THE MAGISTRATE JUDGE:  What is your response to Mr. Carson's contention that Carson-1 is, by its terms, limited to the facts of Carson-1, and does not apply to the complaints addressed in Carson-2?

5          MS. McBARNETT:  Absolutely not.  That's an incorrect reading of Carson-1.  It's clear through the discussion of the law that the law applies to all decisions made by the OSC, all decisions and the merits of those decisions.

10          THE MAGISTRATE JUDGE:  Very well.  You may continue.

12          MS. McBARNETT:  Also, the Petitioner mentions that, I think it was 03-1288 is a PPP complaint that he had not received a resolution for, and the OSC has indeed made a predetermination letter and sent that to him, as well as a closure letter and sent that to him.  And the reasons for their findings were laid out in great detail, so we would take exception to his point of view on that, as well.

19          And also, going back for a moment to 1214(e). Mr. Carson's view of the law is similar to ours.  I believe we're disagreeing over quote/unquote "a positive determination."  He seems to believe that the OSC found a violation of the statute.  The OSC did not find a violation of the statute.  I think the issue spins on a procedural error.  If there were a procedural error, that is not a

3-3

1  violation of the statute.  And perhaps this difference of

2  opinion is the sticking point, rather than the reading of

3  the law.

4        And that's pretty much what I wanted to address.

5        THE MAGISTRATE JUDGE:  Very well, thank you,

6  Ms. McBarnett.

7        The Court will take this matter under advisement

8  and prepare a report and recommendation for consideration

9  by Judge Friedman.  You may all be excused at this time,

10  and the Court again apologizes to all of you for the delay

11  in getting started this afternoon.

12        Thank you very much.  All of you have a pleasant

13  afternoon.

14        (Whereupon, proceedings were concluded.)

15

16

17

18

19

20

21

22

3-4

## PROHIBITED PERSONNEL PRACTICE COMPLAINTS

*Receipts and Investigations*

OSC is authorized to receive and investigate complaints alleging any one or more of 12 prohibited personnel practices defined by law.[1]  Table 1, below, contains summary data (with comparative data for the two previous fiscal years) on OSC's receipt and processing of such complaints during FY 2004.[2]

*Table 1*

| Summary of Prohibited Personnel Practice (PPP) Complaints Activity – Receipts and Processing[a] | | | |
|---|---|---|---|
| | FY 2002 | FY 2003 | FY 2004 |
| Pending complaints carried over from previous fiscal year | 740 | 594 | 653 |
| New complaints received (Intake Unit) | 1,558 | 1,791 | 1,964 |
| *Total complaints* | 2,298 | 2,385 | 2,617 |
| Complaints referred for field investigation | 191 | 162 | 244 |
| Complaints processed and closed | 1,704 | 1,732 | 2,093 |
| Processing times — *Less than 240 days* | 1,284 | 1,471 | 1,799 |
| *More than 240 days* | 420 | 261 | 294 |
| Percentage processed in under 240 days | 75% | 85% | 86% |

[a] The numbers in this table, as well as in other tables in this report, may vary somewhat from those in previous years' reports.  This is due to the fact that in response to an audit by the General Accounting Office, OSC developed more sophisticated computer programs to more accurately track prohibited personnel practice and whistleblower disclosure matters.  Use of the new programs has led to recalibration of some statistics from previous years.

## Enforcement Actions

Enforcement actions are cases filed by OSC with the MSPB that seek either corrective action or disciplinary action. OSC generally files a corrective action complaint with the Board when an agency refuses to provide such action after a formal written request by the Special Counsel.

> • A petition for corrective action was filed with the MSPB on behalf of the complainant, who claimed that the agency involved violated his due process rights when it terminated him without giving him 30 days written notice, nor an opportunity to respond, nor a notice of his rights to appeal the decision to the MSPB. The ALJ assigned to adjudicate the case ruled in the agency's favor against OSC. Because of some of the nuances of the case, the Special Counsel decided not to file a petition for review of the Administrative Law Judge's decision with the full board.

## Summary of Favorable Actions

Complaints involving allegations of reprisal for whistleblowing – OSC's highest priority – accounted for the highest numbers of the complaints resolved, and the highest numbers of favorable actions obtained by OSC during FY 2004[10]

Table 3, below, contains summary data (with comparative data for the three previous fiscal years) on all favorable actions obtained by OSC in connection with its processing in FY 2004 of whistleblower reprisal and other prohibited personnel practice complaints.

*Table 3*

| Summary of Prohibited Personnel Practice Complaints Activity – Favorable Actions | | FY 2001 | FY 2002 | FY 2003 | FY 2004 |
|---|---|---|---|---|---|
| Total favorable actions obtained (*all* prohibited personnel practices) | # of actions | 74 | 126 | 115 | 80 |
| | # of complaints | 66 | 107 | 83 | 65 |
| Favorable actions obtained (reprisal for whistleblowing) | # of actions | 39 | 98 | 75 | 57 |
| | # of complaints | 39 | 83 | 75 | 49 |
| Stays negotiated with agencies[c] | | 13 | 7 | 6 | 11 |
| Stays obtained from Merit Systems Protection Board | | 1 | 1 | 1 | 1 |
| Disciplinary actions negotiated with agencies | | 4 | 13 | 12 | 11 |
| Corrective action complaints filed with the Board | | 0 | 0 | 0 | 1 |
| Disciplinary actions obtained from the Board | | 0 | 0 | 1 | 0 |

[c] Stays and disciplinary actions listed in this table (except for disciplinary actions obtained by OSC from the Board) are included in the totals shown in the first two rows above, but are broken out here for further information.

# Endnotes

[1] Reorganization Plan Number 2 of 1978. See 5 U.S.C.A. App.1, § 204. The Civil Service Reform Act of 1978 (Public Law No. 95-454, 92 Stat. 1111) enlarged OSC's functions and powers.

[2] Public Law No. 101-12 (1989). Provisions setting forth OSC authorities and responsibilities were codified at 5 U.S.C. § 1211, et seq.

[3] Public Law No. 103-94 (1993), codified in various sections of 5 U.S.C. and 12 U.S.C..

[4] Public Law No. 103-353 (1994), codified at 38 U.S.C. § 4301, et seq. The Veterans' Employment Opportunities Act of 1998 (Public Law No. 103-424) also expanded OSC's role in protecting veterans. The act made it a prohibited personnel practice to knowingly take, recommend, or approve (or fail to take, recommend, or approve) any personnel action, if taking (or failing to take) such action would violate a veterans' preference requirement. See 5 U.S.C. § 2302(b)(11). (The former § 2302(b)(11) was re-designated as § 2302(b)(12).).

[5] Public Law No. 103-424 (1994), codified in various sections of title 5 of the U.S. Code. The provision making federal agencies responsible, in consultation with OSC, for informing their employees of rights and remedies under the Whistleblower Protection Act appears at 5 U.S.C. § 2302(c).

[6] Unless noted otherwise, all references after this to prohibited personnel practice complaints include complaints alleging other violations of civil service law, rule, or regulation listed at 5 U.S.C. § 1216, except for alleged violations of the Hatch Act. For the purpose of this annual report, Hatch Act allegations are treated as a separate category of complaints.

[7] When the Complaints Examining Unit makes a preliminary determination to close a complaint without further investigation, it must by law provide complainants with a written statement of reasons, to which they may respond. On the basis of the response, if any, the unit decides whether to close the matter, or refer it to the Investigation and Prosecution Divisions.

[8] The 12 prohibited personnel practices are (in substance): (1) discrimination based on race, color, religion, sex, national origin, age, handicapping condition, marital status, or political affiliation (allegations of discrimination, except discrimination based on marital status or political affiliation, are generally deferred by OSC to EEO processes, consistent with 5 C.F.R. § 1810.1); (2) soliciting or considering improper employment recommendations; (3) coercion of political activity; (4) deceiving or willfully obstructing anyone from competing for employment; (5) influencing anyone to withdraw from competition to improve or injure the employment prospects of another; (6) giving an unauthorized preference or advantage to improve or injure the employment prospects of another; (7) nepotism; (8) reprisal for whistleblowing; 9) reprisal for exercising an appeal, complaint, or grievance right; testifying for or assisting another in exercising such a right; cooperating with or disclosing information to the Special Counsel or an Inspector General; or refusing to obey an order that would require one to violate a law; (10) discrimination based on personal conduct that does not adversely affect job performance; (11) violating veterans' preference requirements; and (12) violating a law, rule or regulation implementing or directly concerning merit system principles at 5 U.S.C. § 2301. It should be noted that these are *general* summaries of the prohibited personnel practices defined at 5 U.S.C. § 2302(b). That section should be consulted for fuller descriptions of the elements of each of these violations.

[9] It should be noted that complaints frequently contain more than one type of allegation. *Table 1*, however, records all allegations received in a complaint as a single matter.

[10] The Whistleblower Protection Act defined the primary role of OSC as protection of employees, especially whistleblowers, from prohibited personnel practices. By comparison to complaints alleging other prohibited personnel practices, the number of whistleblower reprisal matters in which favorable actions are obtained each year, as well as the number of favorable actions in such matters, tend to reflect that emphasis.

Favorable actions are actions taken to directly benefit the complaining employee; actions taken to punish, by disciplinary or other corrective action, the supervisor(s) involved in the personnel action; and systemic action, such as training or educational programs, to prevent future questionable personnel actions. The term encompasses: (1) stays of personnel actions obtained by OSC through voluntary action by the agency involved, or by filing a petition for a stay with the Merit Systems Protection Board; (2) action taken by the parties to resolve a prohibited personnel practice complaint after engaging in voluntary mediation by OSC; (3) action taken by an agency at the request of OSC as a settlement of a prohibited personnel practice complaint, in advance of a written request for corrective action by the Special Counsel; (4) actions taken by an agency with knowledge of a pending OSC investigation, which satisfactorily resolve those matters under inquiry by OSC; and (5) disciplinary action obtained by OSC after filing a petition with the Board, charging an employee with the commission of a prohibited personnel practice.

30    U.S. Office of Special Counsel Fiscal Year 2004 Annual Report



# U.S. MERIT SYSTEMS PROTECTION BOARD

Office of the Chairman
1615 M Street, NW
Washington, DC 20419-0002

Phone: (800) 209-8960; Fax: (202) 653-7130; E-Mail: mspb@mspb.gov

**Chairman**

SEP 25 2006

Joe Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN 37934

Dear Mr. Carson:

I have received your appeal of the Clerk of the Board's determination that the Board has no records responsive to your request for Office of Special Counsel (OSC) reports filed pursuant to 5 U.S.C. § 1214(b)(2)(B) for the years 2002, 2003, and 2004. As the Clerk of the Board explained, the Board does not have copies of such reports. Accordingly, it is not possible to comply with your request for these documents.

In your appeal you also state that you requested OSC reports filed pursuant to 5 U.S.C. § 1214(b)(2)(D) for the years 2002, 2003, and 2004. Additionally, you requested a statement that the Board "has no record, since 1989, of receiving a 1214(b)(2)(B) or 1214(b)(2)(D) report from OSC." We have treated this request as an amended request for OSC reports for the period 1989 through the present. Pursuant to the Board's records disposition schedule, records of the type you requested are destroyed after 5 years. Accordingly, for the years 1989 through 2001, the Board has no copies of OSC reports filed pursuant to 5 U.S.C. §§ 1214(b)(2)(B) and 1214(b)(2)(D). For the period 2002 to the present, the Board was unable to locate any OSC reports filed pursuant to 5 U.S.C. § 1214(b)(2)(D). The Board did, however, locate three OSC reports filed pursuant to 5 U.S.C. § 1214(b)(2)(B) and dated July 6, 2005, May 1, 2006, and May 24, 2006. Because these reports originated with OSC, we are referring your request to OSC for a response to you. *See* 5 C.F.R. § 1204.15.

This is the Board's final decision in your FOIA appeal. You have the right to seek judicial review of this decision in an appropriate United States district court pursuant to 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Neil A. G. McPhie

cc:    Scott J. Bloch, Special Counsel

Exh 7
5-1 8-7



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-254-3600

March 25, 2005

Mr. Joseph P. Carson
10953 Twin Harbour Drive
Knoxville, TN 37922

      Re: Request for Public Information

Dear Mr. Carson:

    I am responding to your letter dated December 18, 2004, concerning the publicly available information the U.S. Office of Special Counsel (OSC) is required to maintain under 5 U.S.C. 1219(a)(1), (2) and (3). I apologize for the delay in responding to your request.

    As is required by §1219(a)(1), (2) and (3), OSC maintains, and makes available for public access, lists of the matters described in those sections. As a courtesy, we have made copies of the lists you have requested and enclosed them.

               Sincerely,

               Hope Riley

Exh 24
6-1

# United States Office of Special Counsel

## Public List

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to heads of agencies in accordance with 5 U.S.C. § 1213(c) and (d). A copy of each agency report is filed at the tab with the corresponding Fiscal year number of the entry below.

## FY 1990, 1991, 1992, 1993

| Name | File No. | Agency | Closure Date |
|------|----------|--------|--------------|
| Billy Kennedy | DI-91-0892 | Department of the Air force | 2/7/1992 |

Documents in File:  Letter to the Secretary of the Air Force
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Agency

| | | | |
|------|----------|--------|--------------|
| Alexander Apostolou | DI-89-1247 | Department of Health and Human Services | 3/17/1992 |

Documents in File:  Letter to the Secretary of Health and Human Services
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Agency
Comments of WB

| | | | |
|------|----------|--------|--------------|
| Joseph Settepani | DI-90-0340 | Department of Health and Human Services | 3/19/1992 |

Documents in File:  Letter to the Secretary of Health and Human Services
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Agency

| | | | |
|------|----------|--------|--------------|
| John Torian | DI-92-0567 | Office of the Director | 7/9/1992 |

Documents in File:  Letter to the Director of Agency

Letter to the President
Letter to the House
Letter to the Senate
Letter to the Comptroller General
Report of Agency

| Name | File No. | Agency | Closure Date |
|------|---------|--------|--------------|
| Lee Ovenshire | DI-91-1436 | Department of the Air force | 7/22/1992 |

Documents in File: Letter to the Secretary of the Air force
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Investigation

| | | | |
|------|---------|--------|--------------|
| Ray Kagel | DI-92-0147 | Department of the Army | 8/5/1992 |

Documents in File: Letter to the Secretary of the Army
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Agency
Comments of WB

| | | | |
|------|---------|--------|--------------|
| Paul Shafer | DI-91-1206 | Department of the Interior | 11/27/1992 |

Documents in File: 2 Letters to the Secretary of the Interior
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Agency

| | | | |
|------|---------|--------|--------------|
| Stanley Baisch | DI-92-0833 | Department of Agriculture | |

Documents in File: Letter to the Secretary of Agriculture
Letter to the President
Letter to the Senate
Letter to the House
Letter to the Comptroller General
Report of Agency

| | | | |
|------|---------|--------|--------------|
| Thomas Gora | DI-92-0732 | Department of Justice | |

Documents in File:  Letter to the Agency
Letter to the President
Letter to the House
Letter to the Senate
Letter to the Comptroller General
Report of Agency

| Name | File No. | Agency | Closure Date |
|------|----------|--------|--------------|
| Susan Waldrop | DI-92-1901 | Department of the Army | |

Documents in File:  Letter to the President
Letter to the Senate
Letter to the House
Letter to the Acting Secretary of the Army
Letter to the Comptroller General
Report of Agency

| | | | |
|------|----------|--------|--------------|
| Rene Latosa | DI-93-0842 | Federal Emergency Management Agency | |

Documents in File:  Letter to the Director
Letter to the President
2 Letters to the Senate
2 Letters to the House
Letter to the Comptroller General
Report of Agency
Comments of WB

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 1994

| OSC File No. | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|
| **Volume 1** | | | | |
| 94-01  DI-93-0555 | HHS | Aberdeen, SD | 10/19/93 | 50 |
| 94-02  DI-92-1836 | DOJ | Los Angeles, CA | 10/15/93 | 50 |
| 94-03  DI-92-0184 | DOD (vol. 2) | Washington, DC | 11/04/93 | 60 |
| 94-04  DI-93-1140 | Agriculture | Kamiah, ID | 1/17/94 | 60 |
| 94-05  DI-93-1935 | DOT | Alaska Region | 8/04/94 | 10/50 |
| 94-06  DI-93-0934 | DOT | Washington, DC | 9/08/94 | 60 |
| **Volume 2** | | | | |
| 94-03  DI-92-0184 | DOD | Washington, DC | 11/04/93 | 60 |

**Result Codes:** 10-Changes in Agency Rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other Actions; 60-Totally unsubstantiated.



# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 1996

| OSC File No. | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|
| **Volume 1** | | | | |
| 96-01  DI-95-0584 | Justice | San Diego, CA | 11/02/95 | 60/50 |
| 96-02  DI-93-1919 | Agriculture | Tongass, AL | 11/28/95 | 60/10 |
| 96-03  DI-93-1504 | USIA | Washington, DC | 12/13/95 | 60/40 |
| 96-04  DI-93-2115 | VA | Amarillo, TX | 01/11/96 | 60/60 |
| 96-05  DI-95-2069 | VA | Battle Creek, MI | 02/22/96 | 60/60 |
| 96-06  DI-95-2330 | DOI | Hadley, MA | 7/17/96 | 60/60 |
| 96-07  DI-94-1912 | Justice | Rome, Italy | 9/16/96 | 10 |
| 96-08  DI-95-2305 | Agriculture | Boise, ID | 9/24/96 | 60/60 |

**Result Codes:  10-Changes in Agency Rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other Actions; 60-Totally unsubstantiated.**

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 1997

| OSC File No. | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|
| **Volume 1** | | | | |
| 97-01  DI-95-2078 | Navy | S. Weymouth, MA | 10/10/96 | 60 |
| 97-02  DI-95-1495 | Energy | Albuquerque, NM | 10/29/96 | 60 |
| **Volume 2** | | | | |
| 97-03  DI-95-2252 | Justice | Oklahoma City, OK | 11/12/96 | 10 |
| 97-04  DI-95-2076 | Defense | Fort Hauchuca, AZ | 1/21/97 | 60 |
| 97-05  DI-95-1039 | HHS | Portland, OR | 2/05/97 | 60 |
| **Volume 3** | | | | |
| 97-06  DI-95-1922 | Army | Fort Riley, Kansas | 2/10/97 | 10 |
| **Volume 4** | | | | |
| 97-07  DI-94-2219 | FEMA | Eastern Missouri | 2/13/97 | 10 |
| 97-08  DI-95-2325 | Justice | El Centro, CA | 2/13/97 | 60 |
| **Volume 5** | | | | |
| 97-09  DI-95-2256 | HUD | Fort Worth, TX | 3/27/97 | 10 |
| 97-10  DI-95-1904 | Treasury | Philadelphia, PA | 4/16/97 | 10 |
| 97-11  DI-96-0469 | HUD | San Francisco, CA | 5/21/97 | 10 |
| **Volume 6** | | | | |
| 97-12  DI-95-2338 | Treasury | Lake Charles, LI | 6/27/97 | 10 |
| 97-13  DI-95-2168 | Army | Warren, MI | 7/25/97 | 10 |
| 97-14  DI-95-0796 | USIA | Washington, DC | 7/28/97 | 60 |

**Result Codes: 10-Changes in Agency Rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other Actions; 60-Totally unsubstantiated.**

6-7

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 1997

| OSC File No. | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|
| **Volume 7** | | | | |
| 97-15  DI-95-2334 | Army | Watervliet, NY | 7/29/97 | 10 |
| DI-95-2335 | | | | |
| DI-95-2336 | | | | |
| DI-95-2337 | | | | |
| **Volume 8** | | | | |
| 97-15  DI-95-2334 | Army | Watervliet, NY | 7/29/97 | 10 |
| DI-95-2335 | | | | |
| DI-95-2336 | | | | |
| DI-95-2337 | | | | |
| Continued | | | | |

Result Codes: 10-Changes in Agency Rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other Actions; 60-Totally unsubstantiated.

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c).  A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 1998

| OSC File No. | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|
| **Volume 1** | | | | |
| 98-01  DI-96-1089 | Interior | Farmington, NM | 10/09/97 | 10 |
| 98-02  DI-96-2216 | Smithsonian | Bronx, NY | 10/14/97 | 30 |
| 98-03  DI-95-2291 | DOD | Fort Belvoir, VA | 10/23/97 | 10 |
| 98-04  DI-95-2027 | Treasury | Fresno, CA | 10/23/97 | 30 |
| 98-05  DI-96-0822 | Navy | Great Lakes, IL. | 10/24/97 | 30 |
| **Volume 2** | | | | |
| 98-06  DI-96-0243 | Treasury | Washington, DC. | 11/18/97 | 30 |
| 98-07  DI-96-0437 | VA | Lubbock, TX | 11/26/97 | 50 |
| 98-08  DI-96-0982 | DOD | Texarkana, TX | 12/09/97 | 30 |
| 98-09  DI-96-0230 | Treasury | Wichita, KS | 1/20/98 | 10 |
| 98-10  DI-96-0456 | Navy | Mare Island, CA | 2/27/98 | 10 |
| 98-11  DI-96-0874 | Defense | Peru, Ind. | 3/13/98 | 10 |
| **Volume 3** | | | | |
| 98-12  DI-95-1886 | Treasury | Washington, DC | 3/13/98 | 30 |
| **Volume 4** | | | | |
| 98-13  DI-95-2367 | Interior | New York, NY | 7/10/98 | 30 |
| 98-14  DI-96-0956 | Justice | San Juan, PR | 8/05/98 | 30 |
| **Volume 5** | | | | |
| 98-15  DI-96-1002 | VA | Montrose, NY | 8/14/98 | 10 |
| **Volume 6** | | | | |
| 98-16  DI-96-0543 | Treasury | Terminal Island, CA | 9/24/98 | 60 |

**Result Codes:  10**-Changes in Agency Rules, regulations, policy or practices; **20**-Restoration of any aggrieved employee; **30**-Disciplinary action against any employee; **40**-Referral of criminal matter to the Attorney General; **50**-Other Actions; **60**-Totally unsubstantiated.

6-9

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 1999

| OSC File No. | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|
| **Volume 1** | | | | |
| 99-01  DI-96-2165 | AF | Warner Robins, GA | 10/06/98 | 10 |
| 99-02  DI-95-2257 | Navy | San Francisco, CA | 10/06/98 | 10 |
| 99-03  DI-95-2365 | DOE | Upton, NY | 11/04/98 | 60 |
| (See volume #2 for 99-03) | | | | |
| 99-04  DI-98-0167 | Treasury | Sunrise, FL | 5/05/99 | 60 |
| 99-05  DI-98-1089 | DOJ/INS | Artesia, NM | 7/08/99 | 10 |
| 99-06  DI-94-0583 | DOI | Hadley, NM | 7/12/99 | 10 |
| DI-95-0287 | | | | |
| DI-95-0700 | | | | |
| DI-95-0756 | | | | |
| | | | | |
| **Volume 2** | | | | |
| 99-03  DI-95-2365 | DOE | Upton, NY | 11/04/98 | 60 |
| | | | | |
| **Volume 3** | | | | |
| Cont. | | | | |
| 95-06  DI-94-0583 | DOI | Hadley, MA. | 7/12/99 | 10 |
| DI-95-0287 | | | | |
| DI-95-0070 | | | | |
| DI-95-0756 | | | | |

**Result Codes: 10**-Changes in Agency Rules, regulations, policy or practices; **20**-Restoration of any aggrieved employee; **30**-Disciplinary action against any employee; **40**-Referral of criminal matter to the Attorney General; **50**-Other Actions; **60**-Totally unsubstantiated.

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 2000

| OSC File No. | | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|---|
| **Volume 1** | | | | | |
| 00-01 | DI-97-1166 | USDA | Albuquerque, NM | 11/24/99 | 10 |
| 00-02 | DI-99-0923 | USDA | Denver, CO | 11/30/99 | 10 |
| 00-03 | DI-97-1151 | USDA | Mexico City, MX | 12/02/99 | 60 |
| 00-04 | DI-98-1434 | NASA | Houston, TX | 12/06/99 | 10 |
| 00-05 | DI-99-0722 DI-97-0912 | Navy | Alameda, CA | 1/04/00 | 50 |
| 00-06 | DI-99-0612 DI-99-0613 | DOI | Crater Lake, OR | 2/23/00 | 10 |
| **Volume 2** | | | | | |
| 00-07 | DI-99-0611 | USDA | Sioux Falls, SD | 3/13/00 | 60 |
| 00-08 | DI-97-0312 | FAA | Houston, TX | 4/06/00 | 10 |
| 00-09 | DI-99-0748 | VA | Phoenix, AZ | 4/13/00 | 10 |
| 00-10 | DI-99-1464 | VA | Toledo, OH | 5/31/00 | 10 |
| 00-11 | DI-98-0894 | USDA | Oak Ridge, TN | 8/04/00 | 60 |
| **Volume 3** | | | | | |
| 00-12 | DI-99-1580 | USDA | Atlanta, GA | 9/20/00 | 10 |
| 00-13 | DI-98-2193 | Air Force | McClellan AFB, CA | 9/21/00 | |

**Result Codes:** 10-Changes in Agency Rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other Actions; 60-Totally unsubstantiated.

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 2001

| OSC File No. | | Agency | Location | Closure Date | Result Code |
|---|---|---|---|---|---|
| **Volume 1** | | | | | |
| 01-1 | DI-00-0792 | Army | St. Louis, MO | 12/06/00 | 10 |
| 01-2 | DI-98-1473 | Navy | Camp Pendleton, CA | 12/07/00 | 10 |
| **Volume 2** | | | | | |
| 01-3 | DI-00-0147 | SBA | Washington, D.C. | 1/17/01 | 10 |
| **Volume 3** | | | | | |
| 01-4 | DI-99-0862 | Education | Washington, D.C. | 1/31/01 | 10 |
| **Volume 4** | | | | | |
| 01-5 | DI-98-2117 | VA | Chicago, IL | 6/27/01 | 10 |
| 01-6 | DI-00-0866 | VA | Gallup, NM | 8/29/01 | 10 |

**Result Codes: 10**-Changes in Agency Rules, regulations, policy or practices; **20**-Restoration of any aggrieved employee; **30**-Disciplinary action against any employee; **40**-Referral of criminal matter to the Attorney General; **50**-Other Actions; **60**-Totally unsubstantiated.

# U.S. OFFICE OF SPECIAL COUNSEL
## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to the heads of agencies in accordance with 5 U.S.C. § 1213(c). A copy of the correspondence, the agency report and the whistleblower's comments, if provided, is filed by fiscal year at the tab corresponding to the case entry.

### FY 2002

| OSC File No. | | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|---|
| **Volume 1** | | | | | |
| 02-01 | DI-00-1814 | DOJ/INS | Altoona, PA | 10/15/01 | 10 |
| | DI-00-2108 | | | | |
| | DI-00-2083 | | | | |
| | DI-00-2151 | | | | |
| 02-02 | DI-98-0257 | HHS | Anchorage, AK | 11/28/01 | 10 |
| **Volume 2** | | | | | |
| 02-03 | DI-00-2246 | DOJ/INS | San Juan, Puerto Rico | 12/06/01 | 10 |
| 02-04 | DI-01-0219 | DOJ | McAllen, TX | 6/03/02 | 10 |
| 02-05 | DI-00-0324 | NCPC | Washington, D.C. | 6/19/02 | 10 |
| 02-06 | DI-00-1284 | USACE | Geryserville, CA | 7/25/02 | 60 |
| **Volume 3** | | | | | |
| 02-07 | DI-00-0378 | DOI/BLM | Washington, D.C. | 8/14/02 | 10 |
| **Volume 4** | | | | | |
| 02-08 | DI-01-1889 | NTSB | Washington, D.C. | 9/30/02 | 60 |

**Result Codes: 10-Changes in Agency Rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other Actions; 60-Totally unsubstantiated.**

6-13

# UNITED STATES OFFICE OF SPECIAL COUNSEL

## PUBLIC LIST

This list is maintained pursuant to 5 U.S.C. § 1219 for matters transmitted to heads of agencies in accordance with 5 U.S.C. §§ 1213(c) and (d).  A copy of each agency report is filed at the tab with the corresponding Fiscal year number of the entry below.

### FY 2003

### VOLUME 1

| OSC File No. | | Agency | Location | Date Closed | Result Code |
|---|---|---|---|---|---|
| 03-1 | DI-00-2079 | DHS | Miami, FL | 10/09/02 | 10 |
| 03-2 | DI-02-0308 | VA | Little Rock, AR | 11/16/02 | 60 |
| 03-3 | DI-00-0935 | Navy | Kingsbay, GA | 11/20/02 | 60 |
| 03-4 | DI-01-1111 | VA | Pittsburg, PA | 11/27/02 | 60 |
| 03-5 | DI-01-1150 | EPA | Newport, TN | 02/27/03 | 60 |

### VOLUME 2

| | | | | | |
|---|---|---|---|---|---|
| 03-6 | DI-00-0139 | Navy | North Island, CA | 03/13/03 | 60 |
| 03-7 | DI-02-0207 | TSA | Washington, D.C. | 3/18/03 | 60 |
| 03-8 | DI-00-2321 | DOT | Washington, D.C. | 5/15/03 | 60 |
| 03-9 | DI-00-0411 | Army | Fort Dix, NJ | 06/06/03 | 40 |

### VOLUME 3

| | | | | | |
|---|---|---|---|---|---|
| 03-10 | DI-02-0413 | DHS | Jamaica, NY | 07/15/03 | 60 |
| 03-11 | DI-01-0572 | Army | Ft. Gordon, GA | 07/18/03 | 60 |

**Result Codes:  10-Changes in agency rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other actions; 60-Totally unsubstantiated.**

6-14

## VOLUME 4

| 03-11 | DI-01-0572 continued | Army | Ft. Gordon, GA | 07/18/03 | 60 |
|-------|----------------------|------|----------------|----------|----|

## VOLUME 5

| 03-11 | DI-01-0572 Continued | Army | Ft. Gordon, GA | 07/18/03 | 60 |
|-------|----------------------|------|----------------|----------|----|
| 03-12 | DI-02-1423 | Army | Ft. Polk, LA | 07/22/03 | 30 |

## VOLUME 6

| 03-12 | DI-02-1423 continued | Army | Ft. Polk, LA | 07/22/03 | 30 |
|-------|----------------------|------|--------------|----------|----|

## VOLUME 7

| 03-12 | DI-02-1423 Continued | Army | Ft. Polk, LA | 07/22/03 | 30 |
|-------|----------------------|------|--------------|----------|----|
| 03-13 | DI-01-1273 | DOT | AK, and DC | 08/01/03 | 50 |

## VOLUME 8

| 03-14 | DI-01-0828 | VA | Decatur, GA | 09/05/03 | 60 |
|-------|------------|------|-------------|----------|----|
| 03-15 | DI-01-1549 | DOC | Oxnard, CA | 09/05/03 | 60 |
| 03-16 | DI-01-0901 | USDA | Amarillo, TX | 09/26/03 | 60 |

**Result Codes:  10-Changes in agency rules, regulations, policy or practices; 20-Restoration of any aggrieved employee; 30-Disciplinary action against any employee; 40-Referral of criminal matter to the Attorney General; 50-Other actions; 60-Totally unsubstantiated.**

6-15

12

For these reasons, the bill requires OSC to issue detailed guidelines identifying specific categories of information that may (or may not) be communicated to agency officials for an investigative purpose, or for the purpose of obtaining corrective action or disciplinary action, and the circumstances under which such information is likely to be communicated to agency officials. The Committee intends the guidelines promulgated in accordance with this Section to be consistent with the purposes of the Whistleblower Protection Act, which expressly states that "the Office of Special Counsel shall act in the interests of employees who seek [its] assistance." In general, the new guidelines should be designed to preclude any disclosure of information that would be detrimental to the interest of the employee seeking the assistance of the Office of Special Counsel.

Subsection 9(b) requires OSC to provide, in each close-out letter terminating an investigation of a prohibited personnel practice, the name and telephone number of an OSC employee who can respond to reasonable questions from the individual who initiated the investigation.

Subsection 9(b) also requires OSC to respond to reasonable questions from whistleblowers whose cases have been terminated by the Special Counsel. The statute currently requires OSC to provide a "close-out" letter to whistleblowers whose cases are terminated. Each such letter is statutorily required to include a summary of the relevant facts ascertained by the Special Counsel, including the facts that support, and the facts that do not support, the whistleblower's allegations.

However, many whistleblowers complain that OSC's close-out letters are perfunctory and give little information about OSC's investigation or the facts of the case. Some have sought to remedy this problem by gaining access to the OSC's investigative files.

Giving whistleblowers a right of access to OSC investigative files may not be appropriate, because such files might contain confidential information about persons other than the whistleblower. Also, witnesses might be less candid with OSC investigators if they knew that OSC files would be open to the whistleblower. On the other hand, OSC is statutorily required to assist whistleblowers, and should not treat them the same way as a federal agency would treat any routine FOIA request.

S. 622 would address this problem by requiring OSC to provide, in each close-out letter terminating an investigation of a prohibited personnel practice, the name and telephone number of an OSC employee who will be available to respond to reasonable questions from the person who initiated the investigation regarding OSC's investigation, the relevant facts ascertained, and the law applicable to the person's allegations. This approach should provide whistleblowers with information necessary for them to make informed decisions about how to proceed with their cases.

Section 10 requires the OSC to conduct an annual survey of individuals who contact the OSC for assistance. This survey builds on the GAO survey referenced above. The Committee hopes that the survey will enable OSC to better assist complaints.

Section 11 provides that the amendments made by the bill become effective on and after the date of enactment.

7-1 ExHH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOSEPH P. CARSON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | Civil Action No: 06-1833 (PLF) |
| v. | ) | |
| U.S. OFFICE OF SPECIAL COUNSEL, | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JOSEPH P CARSON, P.E., PETITIONER

I, Joseph P. Carson, P.E., Petitioner in his action, in lieu of an affidavit, as permitted by 28 USC 1746, declare as follows from personal knowledge and documentary evidence:

1.    I am the complainant for PPP complainants OSC file nos. MA-06-2118 and 06-2752.

2.    After MA-06-2118 was closed, I called OSC attorney Christopher Armstrong and left a voice mail, request an opportunity to obtain the information described in the "TERMINATION STATEMENT" of 5 USC 1214 appendix, even though the "TERMINATION STATEMENT" was not included in the PPP investigation termination letter.  He did not return my call.

3.    On November 14, 2006, I wrote to both Mr. Armstrong and Ms. Sheth,

1

requesting they contact me to provide me the information described in the "TERMINATION STATEMENT" for MA-06-2118 and 06-2752. Neither has contacted me.

4.     Before working hours on January 9, 2007, I left voice mail messages with Judith Kidwell, Christopher Armstrong, and Martha Sheth, requesting an opportunity to obtain the information described in the TERMINATION STATEMENT. As of the close of business on January 11, 2007, no one had returned my call. At the same time, I also faxed Ms. Kidwell my November 14, 2006 letters to Mr. Armstrong and Ms. Sheth.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct in accordance with 28 USC 1746.

Executed this 12th day of January 2007.

Joseph P. Carson, P.E., Petitioner

2

November 14, 2006

Mr. Christopher Armstrong, Attorney
Complaints Examining Unit
U.S. Office of Special Counsel
1730 M St, NW
Suite 218
Washington, DC 20036-4505

Via: Certified mail with return receipt

Re: Another request for you to comply with your statutory duty - your "doubly sworn duty" - to
provide me statutory required information.

Dear Mr. Armstrong,

You know the context of this request.  In good faith, I did my "doubly sworn duty" as a licensed
professional engineer and federal employee, by "blowing whistles," per my positive legal and
professional duty when necessary to protect public health and safety as a nuclear safety engineer
in the Department of Energy (DOE).

DOE unlawfully and repeatedly engaged in prohibited personnel practices (PPP's) against me, to
punish me and intimidate others into silence.  I repeatedly sought OSC's protection, by and large,
none was forthcoming.  This emboldened and enabled the responsible officials in DOE to
continue to punish me.

Eventually I realized that OSC and its employed attorneys are systemic and persistent
lawbreaking failures in complying with their statutory duty to protect those who seek its and their
protection and that there has been a "meltdown" in legal ethics at OSC, implicating possibly
hundreds of attorneys since 1989, both in OSC and in so-called "whistleblower advocacy
organizations" and in private sector attorneys who represent federal employees while they seek or
after they have failed to receive OSC's protection.

You, as a licensed attorney and federal employee, who handled my recent PPP complaint, OSC
file no. MA-06-2118, are "doubly sworn" to comply with your statutory duties to protect me, by
ensuring I receive each and every statutory protection OSC and its attorneys owe me.

You have failed in your "doubly sworn duty" in at least four ways.

1) Contrary to law, you included information prejudicial to my ability to obtain my IRA remedy
in the notice which accompanied the PPP termination notice of August 29, 2006.

2) The PPP termination notice did not state OSC's statutory required determination - whether

1

*Ex 9-1*

there are (not) reasonable grounds to believe a PPP has occurred, exists, or is to be taken, nor did it cite any previous OSC PPP termination letter containing that statutory required determination for the PPP's alleged in the complaint you closed.

3) The PPP termination notice did not include the statutory required "termination statement," as found in 5 USC 1214 appendix.

4) You have not responded to my previous efforts to obtain the information to which I have a statutory entitlement, per the "termination statement" via a phone call with you.

Because of your lawbreaking failure to comply with your statutory obligations to protect me, I initiated an "extraordinary" legal action - a petition for writ of mandamus at US Federal District Court for the District of Columbia, Carson v. Office of Special Counsel, docket no. 06-1833.

On November 8, 2006 Federal Judge Paul Friedman ordered OSC to show cause why the writ of mandamus should not issue.

I have also filed motions with MSPB and am making a request of the MSPB General Counsel, pursuant to its role as an IG, to make referrals of your professional misconduct to your licensing organization.

By this letter, I renew my request that you comply with your statutory duty to protect me by providing me the information described in the missing "termination statement."

Mr. Ronald Molteni, another attorney employed at OSC, has a copy of my motion to compel discovery from OSC, filed with MSPB. It covers much of the information I seek from you. I suggest to obtain a copy of it from him.

I wish to tape record the phone conversation the law says you must have with me to provide this information, I may hire a court reporter to create a legal record of it, so we need to establish a time to have the call, you need to know what information I seek, and, in some cases, you should provide me copies of OSC policy, so I can better pose my questions.

I expect you will not respond to this request, but I wish to formalize it, to make it part of the record in the pending federal case and to provide to your licensing organization as part of any professional misconduct complaint I may choose to file against you.

Respectfully,

Joseph P. Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN 37934
865-300-5831

2

November 14, 2006

Ms. Martha Sheth, Attorney
Complaints Examining Unit
U.S. Office of Special Counsel
1730 M St, NW
Suite 218
Washington, DC 20036-4505

Via: Certified mail with return receipt

Re: Request for you to comply with your statutory duty - your "doubly sworn duty" - to provide
me statutory required information.

Dear Ms. Sheth,

You know the context of this request. In good faith, I did my "doubly sworn duty" as a licensed
professional engineer and federal employee, by "blowing whistles," per my positive legal and
professional duty when necessary to protect public health and safety as a nuclear safety engineer
in the Department of Energy (DOE).

DOE unlawfully and repeatedly engaged in prohibited personnel practices (PPP's) against me, to
punish me and intimidate others into silence. I repeatedly sought OSC's protection, by and large,
none was forthcoming. This emboldened and enabled the responsible officials in DOE to
continue to punish me.

Eventually I realized that OSC and its employed attorneys are systemic and persistent
lawbreaking failures in complying with their statutory duty to protect those who seek its and their
protection and that there has been a "meltdown" in legal ethics at OSC, implicating possibly
hundreds of attorneys since 1989, both in OSC and in so-called "whistleblower advocacy
organizations" and in private sector attorneys who represent federal employees while they seek or
after they have failed to receive OSC's protection.

You, as a licensed attorney and federal employee, who handled my recent PPP complaint, OSC
file no. MA-06-2752, are "doubly sworn" to comply with your statutory duties to protect me, by
ensuring I receive each and every statutory protection OSC and its attorneys owe me.

You have failed in your "doubly sworn duty" in at least two ways.

1) The PPP termination notice did not state OSC's statutory required determination - whether
there are (not) reasonable grounds to believe a PPP has occurred, exists, or is to be taken, nor did
it cite any previous OSC PPP termination letter containing that statutory required determination
for the PPP alleged in the complaint you closed.

1

9-3

2) The PPP termination notice did not include the statutory required "termination statement," as found in 5 USC 1214 appendix.

Because of your lawbreaking failure to comply with your statutory obligations to protect me, I initiated an "extraordinary" legal action - a petition for writ of mandamus at US Federal District Court for the District of Columbia, <u>Carson v. Office of Special Counsel</u>, docket no. 06-1833.

On November 8, 2006 Federal Judge Paul Friedman ordered OSC to show cause why the writ of mandamus should not issue.

By this letter, I renew my request that you comply with your statutory duty to protect me by providing me the information described in the missing "termination statement."

Mr. Ronald Molteni, another attorney employed at OSC, has a copy of my motion to compel discovery from OSC, filed with MSPB. It covers much of the information I seek from you. I suggest to obtain a copy of it from him.

I wish to tape record the phone conversation the law says you must have with me to provide this information, I may hire a court reporter to create a legal record of it, so we need to establish a time to have the call, you need to know what information I seek, and, in some cases, you should provide me copies of OSC policy, so I can better pose my questions.

I expect you will not respond to this request, but I wish to formalize it, to make it part of the record in the pending federal case and to provide to your licensing organization as part of any professional misconduct complaint I may choose to file against you.

Respectfully,

Joseph P. Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN 37934
865-300-5831

2

9-4

## Left Certified Mail Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.39 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.64 |

Postmark — FARRAGUT BR KNOXVILLE TN 37934 — NOV 14 2006

Sent To _Martha Shoth, U.S.OSC_
Street, Apt. No.; or PO Box No. _1730 M St, N.W. Ste 218_
City, State, ZIP+4 _Washington DC 20036_

7006 0810 0005 7648 5524

PS Form 3800, June 2002      See Reverse for Instructions

## Right Certified Mail Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.39 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.64 |

Postmark — FARRAGUT BR KNOXVILLE TN

Sent To _Chris Armstrong, U.S.OSC_
Street, Apt. No.; or PO Box No. _1730 M St, N.W. Ste 218_
City, State, ZIP+4 _Washington, DC 20036_

7006 0810 0005 7648 5258

PS Form 3800, June 2002      See Reverse for Instructions

## First Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
_Martha Shoth_
_U.S. OSC_
_1730 M St. N.W. Ste 218_
_Washington, DC 20036_

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _F.A.K._   ☐ Agent  ☐ Addressee

B. Received by (Printed Name) _F. KU_   C. Date of Delivery _11/16/06_

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)   7006 0810 0005 7648 5524

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-154

## Second Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
_Christophe Armstrong_
_U.S. OSC_
_1730 M St. N.W._
_Ste 218_
_Washington, DC 20036_

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent  ☐ Addressee

B. Received by (Printed Name) _Clawson_   C. Date of Delivery _11/17/06_

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)   7006 0810 0005 7648 5258

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

9-5

# UNITED STATES OF AMERICA
## UNITED STATES MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| **JOSEPH P. CARSON,** | ) |
| | ) |
| | )**Docket No.** |
| | ) |
| **Appellant** | )**AT-1221-06-1125-W-1** |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **DEPARTMENT OF ENERGY,** | ) |
| | ) |
| | ) |
| | ) |
| **Agency** | ) |
| | ) |

## FIRST INTERROGATORY REQUEST TO U.S. OFFICE OF SPECIAL COUNSEL

Per Board regulations at 5 CFR 1201.73(b), the appellant makes this discovery request of the U.S. Office of Special Counsel (OSC).

Responses to this interrogatory should be provided, per Board regulations, to the appellant at his address:

Mr. Joe Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN, 37934.
His phone number is 865-300-5831, his fax number is 865-966-1675,
his email address is<jpcarson@tds.net>

1.   In what jurisdictions are the following OSC attorneys licensed and what are their license numbers in each of those jurisdictions: Christopher Armstrong, Audre Williams, Barbara Wheeler, Melissa Ehlinger, Patrick Boulay, and Pernell Caple. (Note: If any of these attorneys are no longer employed by OSC, provide the jurisdiction in which they were licensed while employed at OSC.)

2.   This IRA whistleblower appeal results from OSC closing appellant's PPP complaint MA-

9-6

06-2118, which appellant filed in light of the new decisional law created by the Supreme Court in Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006).

MA-06-2118 explicitly cited appellant's previous PPP complaints MA-04-1018, 1886, 2444, and MA-05-0820. All involve 3 agency actions appellant alleges created "any other significant change in working conditions" for him and thus, were "personnel actions." These are: 1) the agency, as determined by MSPB, committed a material breach of the February 1994 settlement agreement, used to resolve a whistleblower appeal, 2) Agency officials engaged in a campaign of defamation against appellant alleging he was mentally unstable and a threat of workplace violence, and 3) Alison Davidow failed or refused to process several formal grievances appellant presented per the agency grievance procedure in 1999 and 2000.

MSPB precedent in Roach v. Department of Army 82 MSPR 464, 482 (1999); Singleton v. Ohio National Guard 77 MSPR 583, 587 (1998); and Shivaee v. Department of Navy, 74 MSPR 383, 388 (1997) all state the definition of "personnel action" as being "any other significant change in duties, responsibilities, or working conditions," must be "interpreted broadly" in light of the extensive legislative history.

Shivaee quotes the legislative history in stating that "this personnel action is intended to include any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system," a conclusion near identical to that reached by the Supreme Court in Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006) which stated, "In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Given MSPB precedent and Supreme Court precedent, how does OSC justify its position that the agency actions appellant alleges are "personnel actions" are not "harassment or discrimination that could have a chilling effect on whistleblowing," and are not "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination?"

How did OSC "broadly interpret" the law's definition of "personnel action" before closing appellant's PPP complaints on the basis of "it did not think MSPB would think" a "personnel action" had occurred?

3.    Upon what basis in law or MSPB precedent did OSC determine the appellant had to find specific MSPB precedent addressing the 3 specific agency actions he alleged for OSC to agree that a "personnel action" had occurred? In other words, why was the burden placed on the appellant to find specific MSPB precedent, when the purpose of the law was to create a "catch-all" personnel action, so a specific precedent would not be necessary to determine a "personnel action" had occurred? What specific MSPB precedent exists that would lead OSC to determine MSPB would not find the agency

2

9-7

actions alleged to be "personnel actions"?

4.    How did OSC's involved licensed attorneys comply with their "doubly sworn" duty (as attorneys and federal employees) to comply with their legally binding rules of professional conduct given their statutory responsibility to act "in the interest" of the appellant (see 5 USC 1201 appendix) in closing appellant's related PPP's complaints for the reason cited?

5.    Why did the lawfully required "termination statement" not appear in any of the related PPP termination notices (see 5 USC 1214 appendix)?

6.    When will OSC provide appropriate officials to speak to appellant by phone to provide the information described in the "termination statement."

7.    Does OSC agree or disagree that it must determine, for each PPP complaint received, "whether there are reasonable grounds to believe a PPP has occurred, exists, or is to be taken?"

8.    Does OSC agree or disagree that it must report its PPP determination - whether there are (not) reasonable grounds to believe a PPP has occurred, exists, or is to be taken - to the complaint in its pre-determination notice and/or termination letter? If not, why not?

9.    If MSPB determines the agency actions alleged are "personnel actions," will OSC re-open its PPP investigation, given its statutory obligations to the appellant? Why or why not?

10.    Since appellant, unlike OSC, cannot seek redress from the Board for the agency actions as reprisal for his engaging in protected activities, would he not be prejudiced if OSC does not comply with its statutory duties to protect him from PPP's for these agency actions?

11.    Why did OSC include unwarranted and inaccurate prejudicial statements in the letter accompanying the termination notice for MA-06-2118 which must be provided to MSPB as part of establishing jurisdiction for an IRA appeal? What in 5 USC 1214(a)(3)(A)(i) authorizes OSC to include such prejudicial language in this letter? Are not such prejudicial statements prohibited by 5 USC 1212(g)(1) and 5 USC 1214(b)(2)(E), for that very reason - it may be prejudicial to appellant's efforts to obtain relief at MSPB?

12.    Why did the accompanying letter provides no citations to Board precedent to explain its prejudical statements, which are the exact opposite of OSC's mission - to protect federal employees from PPP's, including acting in their interest - not making prejudicial statements against their efforts to obtain relief, particularly when the claims are completely unsupported by citation to case law?

3

9-8

Respectfully Submitted,

Joseph Carson, P.E., Appellant

# UNITED STATES OF AMERICA
# UNITED STATES MERIT SYSTEMS PROTECTION BOARD

|  |  |
|---|---|
| **JOSEPH P. CARSON,** | ) |
|  | ) |
|  | )**Docket No.** |
|  | ) |
| **Appellant** | )**AT-1221-06-1125-W-1** |
|  | ) |
| **v.** | ) |
|  | ) |
|  | ) |
| **DEPARTMENT OF ENERGY,** | ) |
|  | ) |
|  | ) |
|  | ) |
| **Agency** | ) |

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO U.S. OFFICE OF SPECIAL COUNSEL

Per Board regulations at 5 CFR 1201.73(b), the appellant makes this discovery request of the U.S. Office of Special Counsel (OSC).

Responses to this interrogatory should be provided, per Board regulations, to the appellant at his address:

Mr. Joe Carson, P.E.
10953 Twin Harbour Drive
Knoxville, TN, 37934.
His phone number is 865-300-5831, his fax number is 865-966-1675,
his email address is<jpcarson@tds.net>

1.    Please provide a copy of any OSC documents or policies that govern OSC deliberations regarding allegations that agency actions created a "personnel action" for being "any other significant change in working conditions."

2.    Please provide a copy of any OSC documents or policies that govern how OSC is to "act in the interests" of those who seek its protection.

1

9-10

3.   Please provide a copy of any OSC documents or policies that describe why OSC will place information or claims prejudicial to a complaint's right to obtain relief at MSPB in the letter accompanying a PPP termination notice.

4.   Please provide a copy of any OSC documents or policies that describe why OSC did nots not include the required "termination statement" in its PPP termination notices for MA-06-2118, MA-04-1018, 1886, and 2444.

5.   Please provide a copy of any OSC documents or policies that describe why OSC did not explicitly report its PPP determination "whether there are (not) reasonable grounds to believe a PPP has occurred, exists, or is to be taken" in the preliminary determination notices or PPP termination letters for MA-06-2118, MA-04-1018, 1886, and 2444.

Respectfully Submitted,

_____
Joseph Carson, P.E., Appellant

2

9-11

30. Check the appropriate box (or boxes) for any claim(s) that you wish to raise at this time **in connection with the action or decision you are appealing in Part 2 or Part 3**, and provide supporting information as an **attachment to this form**:

[ ] A claim that the agency made errors in applying required procedures (harmful error), that the agency action or decision was the result of a prohibited personnel practice, or that the agency action or decision was not in accordance with law. See **5 C.F.R. 1201.56(b) and (c)(3)**. For prohibited personnel practice claims, also **see 5 U.S.C. 2302(b)**.

[ ] A claim that the agency action or decision was the result of prohibited discrimination (race, color, religion, sex, national origin, disability, age). See **5 C.F.R. 1201.151 and 1201.153**. If you previously filed a **formal** discrimination complaint with the agency concerning the action or decision you are appealing, **attach a copy of the complaint**. If the agency has issued a final decision on your discrimination complaint, **attach a copy of the decision**.

[x] A claim that the agency action or decision was based on whistleblowing. See **5 U.S.C. 2302(b)(8)**, **5 C.F.R. 1209.2**(b)(2), and **5 C.F.R. 1209.6(a)**. If you previously sought corrective action from the Office of Special Counsel (OSC) concerning the same disclosure(s) and the same agency action or decision you are appealing, **attach a copy of your request to OSC** for corrective action. If you have received written notice from OSC of your right to appeal to the Board, **attach a copy of the OSC notice**. Also see **5 C.F.R. 1209.8 and 1209.9** if you wish to request a **stay** of the agency action or decision.

[ ] A claim that the agency violated your rights under the Uniformed Services Employment or Reemployment Rights Act (USERRA) (other than rights related to the Thrift Savings Plan for Federal employees) in taking the action or making the decision. See **38 U.S.C. 4322 and 4324**, **5 C.F.R. 1208.11**, and **5 C.F.R. 1208.13**. If you previously filed a USERRA complaint with the Department of Labor (DOL) on this matter, **attach a copy of the complaint**. If you have received written notice from DOL that your USERRA complaint could not be resolved, **attach a copy of the DOL notice**.

[ ] A claim that the agency violated a law or regulation relating to veterans' preference in taking the action or making the decision. **IMPORTANT:** If you choose to make your veterans' preference claim in connection with this appeal of an agency action or decision, you may NOT also file a complaint under the redress procedure of the Veterans Employment Opportunities Act (VEOA) with DOL. See **5 U.S.C. 3330a(e)** and **5 C.F.R. 1208.26**.

## PART 5—IRA Appeal, USERRA Appeal, or VEOA Appeal

Complete the applicable question in this part ONLY if you are filing an Individual Right of Action (IRA) appeal under the Whistleblower Protection Act, a Uniformed Services Employment and Reemployment Rights Act (USERRA) appeal, or a Veterans Employment Opportunities Act (VEOA) appeal.

Before you may file an IRA appeal with the Board, you must first file a whistleblower complaint with the Office of Special Counsel (OSC) and exhaust the procedures of that office. See **5 C.F.R. 1209.2(b)(1)**. To pursue redress for a USERRA violation, you may either file a USERRA complaint with the Department of Labor (DOL) or file an appeal with the Board. However, if you filed a USERRA complaint with DOL, you must exhaust DOL procedures before you may file an appeal with the Board. See **5 C.F.R. 1208.11**. Before you may file a VEOA appeal with the Board, you must first file a VEOA complaint with DOL and allow DOL at least 60 days to try to resolve the matter. See **5 C.F.R. 1208.21**.

### Answer Question 31 ONLY if you are filing an IRA appeal.

31. Have you exhausted OSC procedures with respect to your whistleblower complaint, i.e., with respect to the same disclosure(s) and the same agency action or decision underlying your IRA appeal?   [x] Yes   [ ] No

If "Yes," **attach a copy of your complaint to OSC**, provide the information required by the Board's regulations at **5 C.F.R. 1209.6(a)** as an attachment to this form, and explain what action you would like the Board to take in this case. If you have received written notice from OSC of your right to file an IRA appeal with the Board, **attach a copy of the OSC notice**. Also see **5 C.F.R. 1209.9** if you wish to request a **stay** of the agency action or decision.

Exh 10-1

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**ATLANTA REGIONAL OFFICE**

| | |
|---|---|
| JOSEPH P. CARSON, | DOCKET NUMBER |
| Appellant, | AT-1221-06-1125-W-1 |
| v. | |
| DEPARTMENT OF ENERGY, | DATE: October 20, 2006 |
| Agency. | |

**ORDER**

<u>Notice to the Appellant.</u>

The Board may not have jurisdiction to decide your appeal at this time. You state you have sought corrective action from the Office of the Special Counsel (OSC) concerning the matter you are now appealing to the Board. However, it appears that OSC, in its August 29, 2006 letter terminating its investigation into your current complaint, found that your current complaint concerns whistleblower reprisal claims you raised in prior filings with OSC, matters closed by OSC between 1992 and 2005. Furthermore, OSC found that your current complaint offered "no new factual allegations, either in the complaint form, or in your comments in response to our pre-determination letter (dated August 3, 2006).

In order to prove that the Board has jurisdiction over an appeal as an IRA appeal, you must show that you have exhausted your administrative remedies before the OSC and make nonfrivolous allegations that: (1) you engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), i.e., you disclosed information that you reasonably believed evidenced a violation of law, rule or regulation, gross mismanagement, a gross

waste of funds, abuse of authority, or a substantial and specific danger to public health or safety; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *See Rusin v. Department of the Treasury,* 92 M.S.P.R. 298, 304 (2002), *citing, Yunus v. Department of Veterans Affairs,* 242 F.3d 1367 (Fed.Cir.2001).

You have the burden of proving that the Board has jurisdiction over your appeal. Accordingly, I **ORDER** you to file evidence and argument to prove that this action is within the Board's jurisdiction. In your response you must list any and all alleged protected disclosures and you must identify to whom you reported such disclosures. Likewise, you must identify the date you initially reported the alleged protected disclosure(s).

Your submission must be <u>received</u> by this office within 7 calendar days of the date of this Order. Unless I notify you to the contrary, the record on this issue will close on that date. No evidence or argument on the jurisdictional issue filed after the close of record will be accepted unless you show that it is new and material evidence that was unavailable before the record closed.

FOR THE BOARD:

_____
Anthony W. Cummings
Administrative Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

JAN 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOSEPH P. CARSON,                    )
                                     )
        Petitioner                   )
                                     )
                                     )   Civil Action No: 06-1833 (PLF)
        v.                           )
U.S. OFFICE OF SPECIAL COUNSEL,      )
                                     )
        Respondent                   )
                                     )
_____      )

## OPPOSITION TO RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF MANDAMUS

### Part I

Petitioner is pro se and a non-attorney.  As such he now understands Court

precedent as stated in White v. Bloom, 621 F.2d 276, 278-9 (8th Cir. 1980) quoting

in part Bonner v. Circuit Court of St. Louis, 526 F.2d 1331, 1334 (8th Cir. 1975),

which quotes Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974), when taken in

concert with Weber v. United States, 209 F.3d 756 (D.C. Cir. 2000); is that this

Court has the responsibility to ensure, based on the incontestable facts - OSC

letters to petitioner and the established legal record of agency wrongdoing against

petitioner - that OSC scrupulously complies with each and every statutory

obligation it owes petitioner in the two prohibited personnel practice (PPP)

investigations specifically cited in this action, and order mandamus relief to

RECEIVED

JAN 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

correct any deficiencies, up and including the "highly discretionary" writing of recommendations, when OSC can seek their enforcement at the Merit Systems Protection Board (MSPB).

Petitioner now understands the Court's responsibility is independent of his making cogent, timely, or objective legal argument about each and every statutory obligation OSC owes him. He understands his responsibility is limited to bringing relevant, non-public, facts to the Court's attention related to the OSC PPP investigations included in this case, OSC file nos MA-06-2118 and MA-06-2752, and to make a generic claim that OSC has not complied with each and every statutory obligation it owes him as can be documented by those facts.

As he now understands his role in his petition for writ of mandamus and this response, it is to assist the Court's ascertaining how the law applies to the uncontested facts - OSC's letters to him for these 2 PPP complaints that are subject to this petition for writ of mandamus.

This is particularly so given the explicit purpose of the law which created OSC as an independent agency in 1989. It states that OSC (and therefore its attorneys) are to "act in the interests" of federal employees who seek it and their protection, and "mandating that employees should not suffer adverse consequences as a result of PPPs." (see 5 USC 1201 Appendix).

2

Attorneys at OSC are somewhat similar to public defenders - paid by the government to act the interests of those who seek their protection. The burden of proof should be on respondent to demonstrate compliance with it statutory obligations to petitioner, including how its actions demonstrate its "acting in the interests" of the petitioner. If respondent cannot clearly demonstrate this, in any instance, up and including the "highly discretionary" writing of recommendations when OSC can seek their enforcement, then the Court should order it should do so, by Weber v. United States, 209 F.3d 756, 758 (D.C. Cir. 2000).

OSC was created for the primary reason of protecting federal employees as petitioner from experiencing exactly what has repeatedly happened to him - to suffer unlawful retribution for doing his positive legal and professional duty as a licensed professional engineer (P.E.) employed as a nuclear safety engineer by the agency - his "doubly sworn duty as a P.E. and federal employee - to "blow whistles," when necessary to protect public health and safety.

Petitioner has "prevailed" in no fewer than 8 separate whistleblower-related decisions at the U.S. Merit Systems Protection Board (MSPB) since 1994, including 5 unpublished Board decisions: Carson v. Department of Energy SL-1221-94-0179-W-1; AT-1221-95-1197-W-1; SL-1221-94-0179-C-1; AT-1221-96-0948-W-3, 98-0250-W-1, 98-0623-W-1; and AT-1221-96-0948-C-3, 98-0250-C-

3

3, 98-0623-C-3 and 3 published decisions <u>Carson v. Department of Energy</u>, 77

MSPR 453 (1998); 85 MSPR 171 (2000); and 88 MSPR 260 (2001). Some of the

same agency wrongdoing is cited in <u>Carson v. Department of Energy</u>, 398 F.3d

1369 (Fed. Cir. 2005).

In contrast, even though he has also filed over 20 prohibited personnel

practices (PPP) complaints with OSC since 1992, OSC has yet to determine and

report, despite its statutory obligations to protect him from PPPs, "whether there

are (not) reasonable grounds to believe a PPP has occurred, exists, is to be taken"

involving him. It has yet to determine and report its statutory required PPP

determination - whether positive or negative - not in over 20 PPP complaints filed

in a 15 year period. For the PPP investigations it terminated since October 1994,

it has also failed to include the required "TERMINATION STATEMENT" or

provide the information described in it, when requested.

OSC aggressively destroys its investigation records, three years after

creating them. However, OSC's remaining records are inadequate to demonstrate

that it made its statutory required PPP determination - whether negative or positive

- in about 20,000 PPP complaints filed with it since 1989, alleging over 40,000

specific PPPs (exhibit 1).

4

**Part 2**

A general error in the respondent's brief is its not making the necessary

distinction between the various type of PPP (there are a dozen types of PPP listed

at 5 USC 2302(b)(1) to (b)(12)), and how that distinction is highly relevant to this

case. In one and only one type of PPP - whistleblower reprisal described at

(2302(b)(8)) - and, additionally, only if the agency actions alleged as retaliatory

involve "a not otherwise appealable personnel action" (compare 5 CFR 1201.3

with 5 CFR 1209.4(a)) - **must** a federal employee first exhaust his administrative

remedy at OSC before seeking relief at the Merit Systems Protection Board

(MSPB).

That is the situation presented by the two PPP complaints in this case - they

allege the whistleblower reprisal type PPP (5 USC 2302(b)(8)), involving agency

actions that are "not otherwise appealable." For the petitioner to seek relief at the

Merit Systems Protection Board, via an individual right of action appeal, he must

first exhaust his administrative remedy at OSC.

Page 1: The Office of **THE** Special Counsel (emphasis added) was created

as part of the Merit Systems Protection Board by the CSRA of 1978. Because of

widespread criticism during the 1980's of OSC's performance in protecting federal

employees from PPPs, the Whistleblower Protection Act of 1989 (P.L. 101-12)

5

significantly changed OSC (including its name), to the present Office of Special

Counsel (OSC), made it an independent executive branch agency, while

significantly increasing its responsibilities to protect federal employees from PPPs,

particularly whistleblower reprisal. OSC's purposes listed on page one of the

respondent's brief correspond to the WPA of 1989, not the CRSA of 1978.

Page 2. The respondent's statement a little more than halfway down the

page:

> "If....OSC determines....that a PPP has occurred **and that corrective action
> is required** (emphasis added), the Special Counsel reports that
> determination, along with the findings and recommendations, to the
> appropriate agency, MSPB, and OPM."

is **contrary** to established law.

By Weber v. United States, 209 F.3d 756, 758 (D.C. Cir. 2000):

> If the OSC determines that a PPP has occurred, it **must report** (emphasis
> added) its findings to the MSPB, and may petition the Board to take
> corrective action on behalf of the employee.

In other words, by Weber, OSC cannot make a positive PPP determination,

but not report it to MSPB, based on its discretionary determination that the PPP is

not one "which requires corrective action" - it must report each and every

positive PPP determination it makes to MSPB.

OSC has clearly failed to do this, it has failed to comply with Weber, for six

years now. For instance, OSC, in January 2002, issued a press release about a

PPP settlement involving a senior MSPB administrative judge (Exhibit 2) that

only underscores its non-compliance with the law and precedent established in

Weber. OSC cannot, as it described in the press release, "dangle" a draft positive

PPP determination in front of an agency to induce a settlement, on the basis of "if

a settlement occurs, no positive PPP determination will be made."

In fact in the previous, related, case of Carson v. OSC, docket no. 05-537,

OSC agreed it must report all its positive PPP determinations. From the motion

hearing of June 20, 2006 (docket report item no. 65) - page 19, line 1 to page 20,

line 10 (exhibit 3):

> **Mr. Carson**: This case, in large part, depends upon the meaning of 1214(e)
> and how it works into the framework, the statutory framework that OSC has
> to use or is to use in protecting federal employees from prohibited personnel
> practices. And from my review of the law and related documentation, I
> think OSC's statutory obligations to protect federal employees are very
> straightforward.
>
> One, they must investigate the PPP complaints to the extent
> necessary to determine whether there are reasonable grounds to believe a
> PPP has occurred, exists or is to be taken.
>
> Two, it has to make a determination whether it did of its
> conclusions kind of, I'm belaboring the point. It has to formally determine,
> "Yes, we believe there are reasonable grounds to believe a PPP has
> occurred, exists, or is to be taken," or, "No, we have determined there are
> not reasonable grounds to believe."

7

It has to make that determination and then, in the case of a positive determination, it has to report it to the agency as well as to the employee. And in reporting it to the agency it has two options. It can report it per 1214(e), in which case the agency head is then by law charged to respond that he -- the agency head is charged to respond to OSC, certifying that he has reviewed the OSC report containing the positive prohibited personnel practice determination, and respond with the actions taken or planned with a deadline to respond to the positive prohibited personnel practice determination by OSC.

Now, OSC can, in its prosecutorial discretion, make an alternative report to the 1214(e) report, and that is a report that is described at 1214(b)(2)(B), in which case it's making a report for the purpose of establishing jurisdiction at the Merit System Protection Board to seek corrective action in a sense to enforce its recommendations if the agency does not promptly adopt them.

OSC agreed with petitioner's reasoning, according to the transcript, page 28, line 19 to page 29, line 3:

**OSC**:   And also, going back for a moment to 1214(e). Mr. Carson's view of the law is similar to ours. I believe we're disagreeing over quote/unquote "a positive determination." He seems to believe that the OSC found a violation of the statute. The OSC did not find a violation of the statute. I think the issue spins on a procedural error. If there were a procedural error, that is not a violation of the statute. And perhaps this difference of opinion is the sticking point, rather than the reading of the law.

According to OSC's Annual Reports to Congress for FY 2004, OSC

dispositioned 5529 PPP complaints and obtained "favorable action" in 255 of them

during FY 2002-2004, according to table 1 on page 7 and table 3 on page 11

(Exhibits 4).   It should be noted that OSC's Annual Reports to Congress prior to

2003 also indicated the total number of specific PPP's alleged in the PPP complaints it received each year. Based on earlier OSC Annual Reports to Congress, the average PPP complaint alleges between two and three specific PPP's (also see endnote 9 on page 30 of 2004 report, Exhibit 4). Therefore, it is likely that OSC closed over 11,000 specific PPPs allegations in this three year period.

However, according a September 25, 2006 letter of Neil McPhie, the Chairman of MSPB (exhibit 5), in response to petitioner's FOIA appeal, its records for FY 2002 - 2004 indicate that OSC did not make a single positive PPP determination in that time, apparently not even when it made a positive PPP determination involving MSPB!

Chairman McPhie's letter is consistent the public records maintained at OSC, per 5 USC 1219, which indicate that OSC has not made a single positive PPP determination report (or report of any other violation of law, rule or regulation) per 5 USC 1214(e) since being created in 1989 through the end of 2004. (Exhibit 6) Petitioner examined OSC public records in March 2006 and verified that no 5 USC 1214(e) report had been made between the end of 2004 and then.

So OSC's claims in its annual reports about obtaining "favorable actions" are largely unverifiable, because of its failure to formally report all its positive

9

PPP determinations, contrary to its statutory obligations. It is entirely possible that OSC made hundreds or thousands of unreported positive PPP determinations during FY 2002-2004 and then did nothing to protect the affected employee, including not even informing them of its positive PPP determination so they might have a better chance to obtain redress via an independent right of action (IRA) appeal to MSPB.

Petitioner suspects this apparently longstanding and possibly common OSC practice of internally making positive PPP determinations and doing nothing else formally, explains why it will not include the required "TERMINATION STATEMENT" in the PPP investigation termination letters or provide the information described in it if requested, as doing so would result in its unlawful practices being exposed.

From bottom of page 2 and top of page 3:

"if after the initial investigation by the CEU or additional investigation and legal analysis by IPD, OSC determines that there are no reasonable grounds to believe that a PPP has occurred, OSC sends a written status report, referred to as a "pre-determination letter" to the complainant."

The respondent is wrong to imply that OSC only sends a pre-determination letter and termination report when it makes a negative PPP determination. When OSC makes a positive PPP determination, it also concludes its PPP investigation

10

and, as part of ending it, is also required to  provide a pre-determination and PPP investigation termination letter, albeit with much different content!

From end of first paragraph on page 3.

"The pre-determination letter also advises.....that the complainant may telephone the OSC examiner or attorney who reviewed his complaint to discuss his allegations."

There is no requirement that OSC's pre-determination letter include anything about telephoning OSC and the pre-determination letters in this case do not mention, let alone encourage, the complainant to telephone OSC.  In fact, the pre-determination letters explicitly states that his comments must be made in writing.

From last sentence of "OSC complaint process section" on Page 3:

"Included with the termination letter is a `right of action' letter notifying a complainant of his right to seek redress at the MSPB."

This statement is not generally correct, it is only correct if the PPP alleged is whistleblower reprisal, which is only one of 12 types of specific PPP's listed in the law.  This itself is stated in the "right of action" letters in this case (see exhibits 5 and 6 to petition for writ of mandamus):

"because you alleged that you were the victim of the prohibited personnel practice described in 5 USC 2302(b)(8), commonly called reprisal for whistleblowing, you may have the following rights."

If any other type of PPP is alleged, a "right of action" letter is not provided, for the

11

simple reason that the complainant does not have a "right of action."

Page 4 and 5 about "pre-determination letters." It should be noted that the only "determination" contained in the pre-determination letters was "a preliminary determination to close our inquiry into your allegations" - and not a "preliminary determination whether there are (not) reasonable grounds to believe a PPP has occurred, exists, or is to be taken." The law does not allow OSC to make a "pre-determination" that "we have made a preliminary determination to close our inquiry into your allegations" and a subsequent "determination" that "we have made a determination to close our inquiry into your allegations." Instead, the law requires it to report its PPP determination as part of closing its PPP investigation.

Page 6. "Termination letters." The "TERMINATION STATEMENT" is found in the appendix to 5 USC 1214, not 5 USC 1214(b). It is taken from section 12(b) of the 1994 Amendments to the WPA, P.L. 103-424.

5 USC 1214(b)(2)(A) requires OSC to make its statutory required PPP determination and 5 USC 1214(a)(2)(A)(iii) requires the PPP investigation termination letter to notify the complainant of "the reasons for terminating the investigation." There is only one valid reason for terminating a PPP investigation (unless the complainant withdraws it for some reason) - OSC has investigated it to the extent necessary to make its required PPP determination (see 5 USC

1214(a)(1)(A)), has made it (see 5 USC 1214(b)(2)(A)), and has (or is) reporting it.

The PPP investigation termination letters to the petitioner simply do not report OSC's required PPP determination. Instead, the "termination letter" for MA-06-2118 states, "the Complaints Examining Unit is reaffirming the initial decision to close your file," and "we are reaffirming our original determination and closing our inquiry into your case." For MA-06-2752, it states "We informed you of our preliminary determination not to take action on your complaint," and "Accordingly, we have closed our file in the matter."

Additionally, nothing in either termination letter informs the petitioner of his entitlement, per the "TERMINATION STATEMENT" to contact the letter's author by phone to ask reasonable questions as described in it. More importantly, when petitioner tried to contact the attorneys who signed the PPP investigation termination letters by phone and mail seeking that information, they would not respond.

Footnote 3 on page 7: Respondent's focus on the name and phone number is misplaced. It does petitioner no good if the "name" provided by OSC will not "respond to reasonable questions from the person regarding the investigation or review conducted by the Special Counsel, the relevant facts ascertained by the

13

Special Counsel, and the law applicable to the person's allegations."

The language on page 12 of Senate Report 103-358 describes the purpose of the "TERMINATION STATEMENT" in protecting those who seek OSC's protection (Exhibit 7)

Petitioner has executed a declaration about his repeated efforts to obtain the information to which he is entitled for the PPP complaints in this action (Exhibit 8) and provided the related letters and requests (exhibit 9)

Petitioner is not complaining about the lack of a phone number on a letter, he is complaining about OSC's failure to: 1) inform him of his entitlement to obtain this information in its PPP termination letters, and 2) provide it in any case, when requested. In fact, if OSC had responded to petitioner's requests for this information - information he is entitled to receive, this case would not have been filed.

Page 7 on "Individual Right of Action" letters. Respondent is misrepresenting the law, MSPB regulation, and MSPB policy in stating:

1    "there are no statutory provisions governing the content of "right of action" letters,"
2    "OSC provides individual right of action letters as a courtesy to complainants...", and
3    "none of the OSC letters are admissible as evidence in a proceedings before MSPB...without Petitioner's consent."

14

First, it should be noted that 5 USC 1214(a)(3) applies to only one type of

PPP - whistleblower reprisal - as described at 5 USC 2302(b)(8). These sections

of the law do not apply to any of the other 11 types of PPP listed in 2302(b)(1) to

(b)(12).

1214(a)(3)(A)(i) states

"Special Counsel notifies such employee...that an investigation concerning
such employee... has been terminated."

This notification is: 1) separate and distinct from the PPP investigation

termination letter described in 1214(a)(2)(A), 2) must be provided to MSPB as

part of an individual right of action appeal, and 3) is anything but a "courtesy."

1214(a)(2)(B) makes clear that the PPP investigation termination letter (for

any type of PPP, not only whistleblower reprisal) is not to be provided to MSPB

without the complainant's permission. Therefore, the notice described in

1214(a)(3)(A)(i) is not the same as that of 1214(a)(2)(A).

Contrary to what respondent claims, 1214(a)(3)(A)(i), together with

1214(a)(2)(B) and 1214(b)(2)(E) creates a number of specific statutory

requirements for the notice:

1.   it must exist,
2    it must state that the complainant sought protection from OSC for a
     whistleblower reprisal PPP,
3.   it must state the date OSC terminated its investigation,

15

4.     it must advise the complainant to file it as part of an appeal with MSPB, and

5.     it must not state anything else, because any other information could be
       prejudicial to the complainant's effort to obtain relief from MSPB.

Contrary to the respondent's claims, that the notice is a "courtesy" that does

not have to be provided to MSPB, are the statements contained in the letters

themselves:

> "If you choose to file such an appeal you should submit this letter to the
> Board as part of your appeal."

MSPB regulations at 5 CFR 1209.6(a)(2) requires this notice to be included as part

of an Individual Right of Action Appeal in stating:

> "Where the appellant first sought corrective action from the Special
> Counsel, evidence that the appeal is timely filed."

MSPB's appeal form specifically states the "right of action" letter must be

included, consistent with both the MSPB regulation and the OSC notice's

concluding sentence, The MSPB appeal form, on page 7 (exhibit 10) states below

the answer choices in question 31,

> "If you have received written notice from OSC of your right to file an IRA
> appeal with the Board, **attach a copy of the OSC notice** (emphasis in
> original)."

Therefore, the "right of action" notice OSC provided petitioner for OSC file

16

no. MA-06-2118 was a **necessary** part of the respondent's establishing

jurisdiction for a whistleblower appeal at MSPB, Carson v. Department of Energy,

Docket no. AT-1221-06-1125-W-1. Because it is a necessary part of establishing

jurisdiction, he had to provide it. His providing it, with its unlawful, unauthorized,

and prejudicial information, prejudiced the petitioner at MSPB, as can readily be

seen in the words of the jurisdictional order of October 20, 2006, which quoted

from it extensively (Exhibit 11) in questioning whether the petitioner had

jurisdiction to file the appeal.

In fact, respondent's whole line of argument  - that the "right of action"

notice provided by 1214(a)(3)(A)(i) and PPP investigation termination letter of

1214(a)(2)(A) say about the same thing - that OSC had terminated the PPP

investigation - only underscores its non-compliance with the law for **both** its PPP

investigation termination letters **and** its "right of action" letter in MA-06-2118.

The PPP investigation termination letters, in addition to reporting the

termination of the PPP investigation, must report OSC statutory required PPP

determination, per 5 USC 1214(a)(2)(A)(iii) and 1214(b)(2)(A), as well as the

other information described in 1214(a)(2)(A)(i), (ii), and (iv). In contrast, the

"right of action" letter only reports the termination of the 5 USC 2302(b)(8) type-

PPP investigation with no elaborating detail.

17

Page 8 about establishing grounds for writ of mandamus. The respondent

fails to mention the most relevant case - Weber v. United States, 209 F.3d 756

(D.C. Cir. 2000), which makes clear that this Court has subject matter jurisdiction

over each and every of OSC's statutory obligations to protect those who seek its

protection, and is responsible to order mandamus relief as necessary to ensure they

are properly discharged - up to and including writing of "highly discretionary"

recommendations when OSC can seek their enforcement.

Finally, when petitioner filed this petition for writ of mandamus, case no.

05-537 was still pending in front of this Court, and he suggested they be joined, on

page 3 of the brief, because of the similarity in issues of law. He made clear that

different PPP complaints were involved. The Court declined to do so and issued a

decision in case no. 05-537. Since the cases were not combined, the pending

appeal in Circuit Court, docket no. 06-5364, cannot, regardless of its outcome, in

and of itself, provide petitioner a remedy in this case. They have different causes

of action, because they involve different PPPs complaints.

Respectfully Submitted,

Joseph P. Carson, P.E., Petitioner
10953 Twin Harbor Dr
Knoxville, TN 37934
865-300-5831

18

# **Certificate of Service**

I certify that the following documents for <u>Carson v. Office of Special Counsel</u>, docket no. 06-1833:

1.    Opposition to respondent's motion to dismiss petition for writ of mandamus, with its exhibits

was served, via U.S. Mail, on

Representative for OSC

US Dept. of Justice
Attention: Judith Kidwell
555 Fourth St, NW
Room E4905
Washington, DC 20530

Joseph P. Carson

January 12, 2007

20