UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH P. CARSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 06-1833 (PLF) |
| ) | |
| UNITED STATES OFFICE OF ) | |
| SPECIAL COUNSEL, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION
TO SUSPEND THE PROCESSING OF THIS CASE**

The Respondent, the United States Office of Special Counsel ("OSC"), through undersigned counsel,[1] hereby opposes the Petitioner's motion to suspend the processing of this case[2] for the reasons set forth below and respectfully requests that the Petitioner's motion be denied.

**I. INTRODUCTION**

As the basis for his motion, the Petitioner argues that a case now pending in the United States Court of Appeals for the Federal Circuit involves a question of law relevant to this case.[3] *See* Petitioner's ("Pet.") Motion p. 1. The Petitioner contends that the relevant question of law

---

[1] The Petitioner has indicated in his certificate of service that undersigned counsel represent the Department of Energy. In fact, we represent the Office of Special Counsel in this matter.

[2] We assume that the Petitioner is asking the Court not to rule on the Respondent's motion to dismiss, since the briefing in this case has been concluded for several months.

[3] The Petitioner contends that if the appeal is decided against him, the issues in this case will remain the same, while if decided in his favor, the Respondent would have to re-open matters dating back to at least 1994. *See* Pet. Motion p. 2.

on appeal is whether three agency actions "constituted personnel actions for creating 'any other significant change in . . . . working conditions' for Mr. Carson." *See* Pet. Motion p. 2. The agency to which he refers is the U.S. Department of Energy. *See* Respondent's Exhibit ("Exh.") A.

## II. PETITIONER'S APPEAL IS IRRELEVANT TO THIS CASE

It was the Petitioner who filed this action and sought a writ of mandamus and a show cause order against the OSC. Now that the OSC has responded, the Petitioner wants the Court to withhold its decision. Although the Petitioner argues that both cases have the same issue of law, this is not borne out by a comparison of the two cases. Moreover, even if the Petitioner is successful on appeal, it would not support the issuance of a writ of mandamus against the Respondent in this case.

The Petitioner has alleged here that the OSC failed to fulfil its statutory obligations to the Petitioner by not including what the Petitioner perceives is required information in its pre-determination and termination letters. *See* Petition ¶¶ 2, 3. He also alleged that the OSC failed to meet its statutory obligations with respect to right of action letters, and that the OSC added "prejudicial language" to one of the Petitioner's right of action letters. ¶ 3(c).

In contrast, the Petitioner's appeal concerns the Merit Systems Protection Board's ("MSPB") decision[4] to dismiss the Petitioner's case for lack of jurisdiction because he: (1) failed to make nonfrivolous allegations of fact to establish the jurisdiction of the MSPB; and, therefore, (2) failed to establish that he had a right to a hearing on the merits of his claim. *See*

---

[4] This initial decision dated December 29, 2006, became final on February 2, 2007, and is the decision that was appealed to the U.S. Court of Appeals for the Federal Circuit.

Respondent's Exh. A. The MSPB determined that the Petitioner had failed to allege "any new set of facts other than those he [had] previously raised in his numerous prior appeals filed over the years between 1992 and 2005." *See* Respondent's Exh. A, p. 5. The MSPB also determined that the Petitioner had failed to support his claims that the agency's failure to comply with a 1994 settlement agreement resulted in new personnel actions or in a "rumor campaign" against the Petitioner. *See* Respondent's Exh. A, pp. 6-11.

Thus, even if the Petitioner prevailed on appeal, that appellate decision would not address the issues in this case. In fact, the Petitioner's MSPB case would be remanded to the MSPB for a hearing. Accordingly, the Petitioner's motion to suspend the processing of this case should be denied.

## Conclusion

For the foregoing reasons, the Petitioner's motion to suspend the processing of this case should be denied and the petition for writ of mandamus dismissed.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Room E4905
Washington, D.C. 20530
(202) 514-7250

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of June, 2007, I caused the foregoing Opposition to the Petitioner's Motion to Suspend the Processing of This Case to be served by first class mail, postage prepaid, on:

Joseph P. Carson
10953 Twin Harbour Drive
Knoxville, TN 37934

_____/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney

RESPONDENT'S EXHIBIT A
DECISION OF THE MSPB DATED DECEMBER 2006

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
ATLANTA REGIONAL OFFICE

| | |
|---|---|
| JOSEPH P. CARSON,<br>　　　Appellant, | DOCKET NUMBER<br>AT-1221-06-1125-W-1 |
| v. | |
| DEPARTMENT OF ENERGY,<br>　　　Agency. | DATE: December 29, 2006 |

Joseph P. Carson, Knoxville, Tennessee, pro se.

Mary D. Copeland, Esquire, Oak Ridge, Tennessee, for the agency.

BEFORE
Anthony W. Cummings
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

On September 2, 2006, Joseph P. Carson filed an individual right of action (IRA) appeal with the Board's Atlanta Regional Office in which he alleged that the Office of Special Counsel (OSC) failed to protect him from prohibited personnel practices by his employing agency, the Department of Energy. Based on the following analysis and findings, the appeal is DISMISSED for lack of jurisdiction.

001

## ANALYSIS AND FINDINGS

<u>Jurisdictional Requirements</u>

Under the provisions of the Whistleblower Protection Act (WPA), an employee who believes that he was retaliated against because he made a protected whistleblowing disclosure may file an IRA appeal with the Board. *See* 5 U.S.C. § 1221(a); 5 C.F.R. § 1209.2 (2006). Before filing an IRA appeal with the Board of an action that is not an "otherwise appealable action," the individual must first seek corrective action from the OSC. 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1209.2(b)(a) (2006). The Board may only review those disclosures and personnel actions that an appellant raised before the OSC. *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (Fed. Cir. 1993); *Lewis v. Department of the Army*, 58 M.S.P.R. 325, 332 (1993).

The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002). The question of whether the appellant has made a nonfrivolous allegation is determined based on the written record, without holding a jurisdictional hearing. *See Spencer v. Department of the Navy*, 327 F.3d 1354, 1356 (Fed. Cir. 2003); *Iyer v. Department of the Treasury*, 95 M.S.P.R. 239, ¶ 4 (2003), *aff'd*, 104 F. App'x. 159 (Fed. Cir. 2004).

For an appellant to establish that he has exhausted his administrative remedies before OSC, except in situations where the underlying personnel action is otherwise appealable to the Board, the appellant must show that either: (a) OSC has notified him "that an investigation concerning [him] ... has been terminated," and "no more than 60 days have elapsed since notification was provided" to him; or (b) 120 days have elapsed since the appellant sought



corrective action from OSC, and he "has not been notified by [OSC] that [it] shall seek corrective action on [his] behalf." 5 U.S.C. § 1214(a)(3). In the instant appeal, it is undisputed that the appellant filed a complaint with OSC and that OSC subsequently notified him that it had terminated its investigation. Accordingly, I find that the appellant has exhausted his administrative remedies before OSC.

Regarding whether the appellant has made a nonfrivolous allegation that he engaged in whistleblowing activity by making a protected disclosure, the appellant is not required to *prove* that he made protected disclosures but, rather, is required merely to make a nonfrivolous allegation that at least one of his disclosures was protected under 5 U.S.C. § 2302(b)(8). *Grubb v. Department of the Interior*, 96 M.S.P.R. 377, ¶ 11 (2004); *Greenspan v. Department of Veterans Affairs*, 94 M.S.P.R. 247, ¶¶ 9-10 (2003). Protected whistleblowing takes place where an appellant made a disclosure that he reasonably believed evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. *Grubb*, 96 M.S.P.R. 377, ¶ 11; *see also DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999).

In an IRA appeal, a 'personnel action' is defined as: (1) an appointment; (2) a promotion; (3) an adverse action under 5 U.S.C. chapter 75 or other disciplinary or corrective action; (4) a detail, transfer, or reassignment; (5) a reinstatement; (6) a restoration; (7) a reemployment; (8) a performance evaluation under 5 U.S.C. chapter 43; (9) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other personnel action; (10) a decision to order psychiatric testing or examination; or (11) any other significant change in duties, responsibilities, or working conditions. *See* 5 C.F.R. § 1209.4.



003

<u>The appellant failed to make allegations of fact, which if proven, would show that the Board has jurisdiction over this appeal.</u>

By Order dated October 20, 2006, the appellant was apprised of the jurisdictional issue this case presents. Appeal File (AF), Tab 6. Specifically, the appellant was informed that he had to file a statement of factual evidence, *i.e.*, he had to assert nonfrivolous allegations of jurisdiction supported by affidavits or other evidence, responding to the requirements noted above. *Id.* He was informed that the written record would determine whether his allegations were non-frivolous. *Id.* He was also informed that if he made nonfrivolous allegations of fact to establish jurisdiction, he would be entitled to a hearing on the merits of his claim, and if he did not his appeal would be dismissed based on lack of Board jurisdiction. *Id.*

In response to the Board's October 20, 2006 Order on the jurisdictional issue, the appellant submitted the following information as his list of alleged personnel actions:

1. In prior appeals to the Board, it was found that the appellant was a whistleblower and one of his cases settled. The appellant contends that, "any other significant change in working conditions" occurred and resulted in a personnel action when other agency employees were allegedly deterred "from making protected disclosures or engaging in protected activities" due to the agency's alleged failure to comply with the terms of his settlement agreement.

2. Appellant contends that "any other significant change in working conditions" occurred and resulted in a personnel action when agency employees started "a rumor campaign" in which they alleged that appellant posed "a threat of workplace violence" which, according to appellant, was due to the agency's alleged failure to comply with the terms of the settlement agreement reached in his prior whistleblower appeals.

3. Appellant contends that "any other significant change in working conditions" occurred and resulted in a personnel action when the agency allegedly deterred other employees from "making protected disclosures or engaging in protected

004

> activities" by allegedly failing to process his grievances or inform him why it failed to do so after he blew the whistle as indicated in his prior whistleblower appeals to the Board.

AF, Tab 8, p. 7.

For the following reasons, I find that the appellant has failed to make nonfrivolous allegations of whistleblowing. First, in his response to the jurisdictional issue, appellant does not allege any new set of facts other than those he has previously raised in his numerous prior IRA appeals filed over the years between 1992 and 2005. Indeed, in his response, the appellant specifically acknowledges this fact as follows:

> "So while the appellant did not cite make (sic) make new allegations or provide additional evidence in his PPP complaint MA-06-2118 ...."

See AF, Tab 8, p. 5. This comports with OSC's assessment of appellant's current PPP complaint as stated in its August 29, 2006 letter in which it terminated its investigation into appellant's current PPP complaint.[1] See AF, Tab 1. Thus,

---

[1] In its August 29, 2006 letter closing its inquiry into the appellant's complaint, OSC stated that the appellant's current complaint "concerns prior reprisal for whistleblowing complaints that you (the appellant) had filed with OSC (closed by OSC between 1992 and 2005)" and that "you have offered no new factual allegations...." See AF, Tab 1. Furthermore, OSC repeated the claims appellant raised in both his "current complaint form" as well as in his written response to OSC's letter announcing its intention to close its inquiry into his current prohibited personnel practice complaint. Those claims included, in pertinent part, appellant's contention that:

> a) OSC's previous interpretations of "any other significant change in working conditions" are incorrect in light of the Board's ruling in *Roach v. Department of the Army*, 82 M.S.P.R. 464 (1999); and
>
> b) the Supreme Court's decision in Burlington Northern and Santa Fe Railway Co., v. White, 126 S.Ct. 2405 (2006), (a) established new law relevant to the jurisdictional issue, (b) by the Court's analysis, "any other significant change in working conditions" cannot have a threshold higher than "employer's action that could well dissuade a reasonable worker from making or supporting a charge of discrimination; (c) given the Court's holding, "it is now 'open and shut' that he [appellant] experienced" personnel actions in his prior

appellant is relying upon disclosures already ruled as protected under 5 U.S.C. § 2302(b)(8). However, in the instant appeal, appellant now claims that the agency's alleged failure to comply with a settlement agreement reached with the agency in his prior IRA appeal in 1994 has resulted in new personnel actions based upon it's allegedly creating significant changes in his working conditions within the meaning of 5 U.S.C. § 2302(a)(2)(A)(xi).

Prior to October 29, 1994, the definition of "personnel action" included "any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level." 5 U.S.C. § 2302(a)(2)(A)(x). Effective October 29, 1994, this definition was amended to state: "[a]ny other significant change in duties, responsibilities, or working conditions." Pub.L.No. 103-424 § 59(a)(1), (2), 108 Stat. 4363 (codified as amended at 5 U.S.C.A. § 2302(a)(2)(A)(xi)). The 1994 amendment's deletion of the qualifying language "which is inconsistent with the employee's salary or grade level" enlarged the category of actions encompassed in the definition of "personnel action." *See Shivaee v. Department of the Navy,* 74 M.S.P.R. 383, 388 (1997), *citing Briley v. National Archives and Records Administration,* 71 M.S.P.R. 211, 223 (1996). The legislative history shows that this provision for "personnel action" is to be interpreted broadly and intended to include any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, and should be determined on a case-by-case basis. *See* 140 Cong. Rec. H11, 421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey).

For the following reasons, I find the appellant's aforementioned allegations do not constitute nonfrivolous allegations that the agency took personnel actions against him within the meaning of 5 U.S.C. § 2302(a)(2)(A)(xi). Since

---

PPP complaints; and (d) based on this decision, OSC should reverse its earlier jurisdictional determinations in his prior complaints;

AF, Tab 1.



appellant's allegations highlighted in his jurisdictional response paragraphs (1) and (3) are essentially identical, I will address them first.

In paragraphs (1) and (3) of his response to the jurisdictional issue as highlighted above, the appellant essentially alleges that the agency's failure to comply with a 1994 settlement agreement in one of his previous appeals has created an environment within the workplace wherein employees are "deterred" from engaging in protected activity such as making protected disclosures of agency wrongdoing. Appellant's claims in this regard are generalized and unspecified in that he has failed to describe any specific instance wherein the agency's alleged noncompliance with its 1994 settlement agreement in his case resulted in any other employees' failure to engage in protected activity. Likewise, I note appellant's claim in this regard relates to the circumstances of his fellow employees and not himself. Thus, I find that the appellant has failed to nonfrivolously allege that the agency's alleged failure to comply with its 1994 settlement agreement resulted in a significant change in *his* duties, responsibilities, and/or working conditions, as mandated by the statute. Accordingly, I find that this allegation is not a personnel action within the meaning of the WPA.

Additionally, I find appellant's allegation that the agency's alleged noncompliance with a 1994 settlement agreement resulted in a "rumor campaign" is similarly vague and generalized. For instance, to the extent appellant is claiming that the agency's alleged noncompliance with the 1994 settlement agreement constitutes the "personnel action" resulting in the "rumor campaign," I find such is not the case since the appellant has not sufficiently shown how the agency's alleged act of noncompliance with his settlement agreement was responsible for significantly changing his working conditions.

Likewise, to the extent appellant is claiming the "rumor campaign" itself constitutes a personnel action, I find that the rumors of appellant posing a threat of workplace violence do not constitute actions that were taken by, or on behalf


007

of the agency, or in which the agency could be deemed complicit. *Cf. Arauz v. Department of Justice*, 89 M.S.P.R. 529, 533 (2001). Rather, if indeed true, they describe actions initiated by appellant's co-workers and, therefore, cannot constitute covered 'personnel actions' for WPA purposes; *i.e.*, the actions of an employee representing agency management. *See* 5 U.S.C. § 2302(b) ('Any employee' in authority prohibited from taking various actions, including those listed in section 2302(b)(8).)

Thus, I find that appellant's allegations in this regard do not constitute personnel actions within the meaning of 5 U.S.C. § 2302(a)(2)(A)(xi), in that appellant has failed to sufficiently show how management is responsible for creating an environment wherein such rumors would fester. Employees talk, and appellant has failed to show, other than via bare allegations, how any affirmative action or lack of action by the agency has resulted in this talk among agency employees. Consequently, I find that the appellant has failed to allege personnel actions with respect to his generalized complaints about his working conditions.

Finally, assuming *arguendo* that appellant's allegations of a "rumor campaign" or that agency noncompliance with a settlement agreement resulted in deterring employees from engaging in protected activity constituted personnel actions, I find that the appellant failed to nonfrivolously allege that the protected disclosures of his prior IRA appeals were a contributing factor to the agency taking these personnel actions. As previously noted, to establish Board jurisdiction over the IRA appeal, the appellant also must nonfrivolously allege that his whistleblowing activity was a contributing factor in the agency's decision to take or fail to take a personnel action. Thus, to satisfy the contributing factor jurisdictional criterion, the appellant must raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Perkins v. Department of Veterans Affairs*, 98 M.S.P.R. 250, ¶ 19 (2005). The appellant may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence,



including, but not limited to, evidence that the official taking the personnel action knew of a disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Easterbrook v. Department of Justice*, 85 M.S.P.R. 60, ¶ 7 (2000).

With regard to the knowledge prong of the knowledge/timing test, the appellant may establish, for jurisdictional purposes, that a disclosure was a contributing factor in a personnel action by nonfrivolously alleging that the official taking the personnel action had constructive knowledge of the disclosure; constructive knowledge may be established by demonstrating that an individual with actual knowledge of the disclosure influenced the official(s) accused of taking the retaliatory action. *See Marchese v. Department of the Navy*, 65 M.S.P.R. 104, 108 (1994). Regarding the timing prong of the knowledge/timing test, the relevant inquiry is the time between when the agency official taking the action had actual or constructive knowledge of the disclosure—not necessarily the date of the disclosure itself—and the time that the action was taken. *Caddell v. Department of Justice*, 57 M.S.P.R. 508, 514 (1993).

In the instant appeal, based upon the transcript of appellant's prior appeal before Judge Stuart Miller, a Mr. Cooper[2] testified that he first believed appellant might pose a threat of workplace violence as early as 1992, and that he discussed this belief with other employees at that time. *See* AF, Tab 8, sub-tab 6. In his response to the Board's jurisdictional order, appellant states that the disclosures previously found to be protected by the Board are found in the Board's initial decision in *Carson v. Department of Energy*, AT-1221-98-0623-W-1 (Init. Dec., April 29, 1999). In that decision, Judge Miller found that the appellant testified

---

[2] William Cooper, appellant's supervisor in 1992. *See Carson v. Department of Energy*, 85 M.S.P.R. 171, 174 (2000).


009

to only six of at least twenty disclosures he made between 1991 and 1998. *See Carson v. Department of Energy*, AT-1221-98-0623-W-1 (Init. Dec., April 29, 1999), p. 3. Judge Miller found that the first of appellant's six disclosures occurred in "early 1993" and appellant testified that:

> "he did a review of programs in the Oak Ridge Operations in which he found a program "that was broken." He testified that there were no records of accidents, investigations or corrective measures that were recommended or implemented. This was important because it was essential to have a history in order to identify root causes to prevent the same problems from reoccurring both at Oak Ridge and across the agency (DOE). *See* Appellant's Exhibit K, pp. 8-10. He wrote a draft report of his findings and attached it to a "larger" report which was furnished to his management chain (Senior Residents Cooper and Hillman)."

*See id.* at p. 3. The next four disclosures identified in Judge Miller's decision all occurred after 1993, most notably in 1996 and 1997. *See id.* Indeed, the evidence suggested that the agency's failure to heed appellant's disclosure of a "lack of reporting and documentation of safety occurrences/accidents and corrective measures," which appellant initially identified in 1993 and again in 1996, may have indirectly contributed to the death of a welder who burned to death in February 1997. *See id.*

With respect to these disclosures identified by appellant between 1993 and 1997, I find that they obviously could not have been a contributing factor to the rumors circulating around appellant's workplace as early as 1992 of appellant posing a threat of workplace violence since the evidence shows these alleged rumors occurred prior to the disclosures.

In terms of the final disclosure, appellant testified before Judge Miller that he reported the final disclosure in 1991 and 1992 to the Inspector General that the use of support services contractors/consultants "was excessive and wasteful." *See Carson v. Department of Energy*, AT-1221-98-0623-W-1 (Init. Dec., April 29, 1999), p. 6. However, appellant has not shown how "the fact of, or content



of," that disclosure was one factor that tended to affect the personnel action in any way. *See Perkins*, 98 M.S.P.R., ¶ 19. Indeed, since I have previously found that appellant's allegation of "a rumor campaign" and that the agency's noncompliance with the 1994 settlement agreement served to "deter" other employees from engaging in protected activity do not constitute personnel actions, this point is moot.

Accordingly, for all of the foregoing reasons, I find that the appellant's allegations do not constitute non-frivolous allegations of whistleblowing.[3]

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:  _____
Anthony W. Cummings
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **February 2, 2007**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a

---

[3] Because the appellant's submissions on the jurisdictional issue failed to raise nonfrivolous allegations of fact that he made a protected disclosure that was a contributing factor in the agency's decision to take or fail to take a personnel action, no hearing was held in this appeal. *See Spencer*, 327 F.3d at 1356; *Yunus*, 242 F.3d at 1371.