UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JOSEPH P. CARSON,                   )
                                    )
       Petitioner,                  )
                                    )
       v.                           )   Civil Action No. 06-1833 (PLF)
                                    )
U.S. OFFICE OF SPECIAL COUNSEL,     )
                                    )
       Respondent.                  )
_____ )

OPINION

        Petitioner, *pro se*, seeks a writ of mandamus. Petitioner is an employee of the Department of Energy and has filed "over 20 prohibited personnel practices (PPP) complaints since 1992" with the Office of the Special Counsel ("OSC") for alleged Prohibited Personnel Practices ("PPP"). Petitioner's Opposition to Respondent's Motion to Dismiss Petition for Writ of Mandamus ("Opp.") at 4. Two of petitioner's cases have been resolved by the undersigned. Carson v. U.S. Office of Special Counsel was decided by the Court on March 27, 2006. See Civil Action No. 04-0315 PLF, 2006 WL 785292 (D.D.C. March 27, 2006) ("Carson I"). In Carson I, the undersigned dismissed a petition for a writ of mandamus because it found that one of the claims was barred by the statute of limitations and that with respect to the other claims OSC had complied with the statutory requirements. See id. at *7. In the second decision from this Court, Carson v. U.S. Office of Special Counsel, Civil Action No. 05-0537 (D.D.C. Oct. 30, 2006) ("Carson II"), the undersigned dismissed a petition for a writ of mandamus. There the Court adopted the report and recommendations of the Magistrate Judge, who found that the

respondent, the Office of Special Counsel, had "fulfilled its required duty by investigating the claims made by the Petitioner, and used its discretion in closing the claims because it did not find sufficient evidence to support Petitioner's claims of PPP." Carson II, Report and Recommendation at 12.

On October 23, 2006, petitioner filed another petition for a writ of mandamus, the one at issue here, requesting the Court to order the Office of Special Counsel ("OSC") to take specific actions on specific claims that petitioner had filed (MA-06-2118 and MA-06-2752). See Petition at 4-5. Respondent again filed a motion to dismiss. See Respondent's Response to Show-Cause Order and Motion to Dismiss Petition for Writ of Mandamus. ("Mot."). Petitioner asserts in this petition that OSC has not complied with its statutorily mandated obligations with respect to his complaints and that a writ of mandamus is the appropriate remedy. See Petition ¶¶ 7-10, 16. Specifically, petitioner requests that this Court issue a writ instructing the "OSC [to] provide the [statutorily] required information, and not [to] include prohibited information related to its written communications related to its disposition of petitioner's PPP complaints MA-06-2118 and MA-06-2752, as well as [to] provide petitioner the additional information he requests per the required (but now missing) 'termination statement.'" See id. ¶ 15. Upon careful consideration of the entire record, the Court will grant respondent's motion to dismiss.

I. BACKGROUND

In Carson I, the Court described the relevant statutory background, the power of the Court to issue a writ of mandamus and the standards for issuing a writ of mandamus. See

Carson I, 2006 WL 785292, at *1-*3. For the convenience of the parties, the Court repeats the relevant statutory framework herein.

### A. The Whistleblower Protection Act

Under the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 1201 et seq., an agency is prohibited from taking any personnel action in reprisal for the disclosure of information by an applicant that the applicant reasonably believes evidences violation of any law, rule, or regulation by another agency employee. See 5 U.S.C. §§ 1221(a), 2302(b)(8)(A)(I); see also Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002); Weber v. United States, 209 F.3d 756, 757-58 (D.C. Cir. 2000). When an agency takes such an action, it is considered to be a prohibited personnel practice ("PPP"). An employee who believes he has been the victim of a PPP must first complain to the OSC, which is required to investigate the complaint "to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." 5 U.S.C. § 1214; see also Weber v. United States, 209 F.3d at 758. The initial investigation is conducted by OSC's Complaints Examining Unit ("CEU"). See 5 C.F.R. § 1800.1(c)(4); PETER B. BROIDA, A GUIDE TO MERIT SYSTEMS PROTECTION BOARD LAW & PRACTICE, Ch. 13 § IV.B.1 (2004). If CEU determines that further investigation is needed, the complaint is referred to one of the agency's Investigation and Prosecution Divisions ("IPDs") for further investigation. See id. (describing the organizational structure of OSC). Based upon the IPD investigation, if OSC finds reasonable grounds to believe that a PPP has occurred, it may recommend to the agency involved that it take corrective action to remedy the apparent violation. See 5 U.S.C. § 1214(b)(2)(B). If the agency refuses or fails to take

action, OSC may petition the Merit Systems Protection Board ("MSPB") to order the appropriate corrective action. See 5 U.S.C. § 1214(b)(2)(C).

While an investigation is pending, OSC must provide written status updates to a complainant. See 5 U.S.C. §§ 1214(a)(1)(C)(I) and (ii). OSC must issue these updates within 90 days of the filing of a complaint, and at 60-day intervals thereafter, until the investigation is complete. See id. The updates must describe the current status of the complaint and any action taken during the preceding time period since the last update was issued. See id. If, after investigation, OSC finds no reasonable ground to believe that a PPP has occurred, it sends a written status report ("pre-determination letter") to the complainant informing him of the proposed findings and legal conclusions. See 5 U.S.C. § 1214(a)(1)(D). OSC must provide this pre-determination letter at least ten days before terminating an investigation. See id.

In Section 1213, the Act sets out a separate set of procedures for investigating allegations of agency wrongdoing (known as whistleblower disclosures) under 5 U.S.C. § 2302(b)(8), which evidence a "(i) violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority or a substantial and specific danger to public health and safety." 5 U.S.C. § 2302 (b)(8)(A); see 5 U.S.C. § 1213(a). If OSC finds a "substantial likelihood" that the information constitutes a whistleblower disclosure, OSC transmits the information to the head of the involved agency. See 5 U.S.C. § 1213(b). The agency must conduct an investigation and submit a written report of its findings to OSC. See id. If OSC does not find a substantial likelihood that the information constitutes a whistleblower disclosure, it must inform the submitting individual of "the reasons why the disclosure may not be further acted on[.]" 5 U.S.C. § 1213(g)(3)(A).

If OSC's investigation does not uncover support for the complaint, the employee still may seek corrective action from an alleged PPP before the MSPB. See 5 U.S.C. §§ 1214(a)(3), 1221. But "an employee alleging a [PPP] must give the OSC a chance to investigate before going to the MSPB." Weber v. United States, 209 F.3d at 759. Any decision of the MSPB is appealable to the United States Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703.

### B. Writ of Mandamus

#### 1. Jurisdiction Over OSC

Although the Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, the All Writs Act allows the Court to order a remedy only where subject matter jurisdiction already exists. See 28 U.S.C. § 1651(a) (providing that the "Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions . . ."); see also Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 76 (D.C. Cir. 1984) ("[I]t is firmly established that [Section] 1651 does not expand the jurisdiction of a court."). In addition, the Civil Service Recovery Act of 1978 ("CSRA"), Pub. L. No. 94-454, 92 Stat. 1111 (codified as amended in scattered sections of Title 5 of the United States Code), which governs non-constitutional claims brought by federal employees against the United States government or its agencies, does not provide for subject matter jurisdiction in the United States district courts for review of OSC decisions made pursuant to its

authority under the statute.  See Fornaro v. James, 416 F.3d 63, 67 (D.C. Cir. 2005) (CSRA is comprehensive and exclusive remedial scheme); Carducci v. Regan, 714 F.2d 171, 174 (D.C. Cir. 1983) (CSRA is "exhaustive remedial scheme" that clearly evidences congressional intent not to permit alternative or preexisting remedies); Borrel v. United States Int'l Communication Agency, 682 F.2d 981, 988 (D.C. Cir. 1982) ("[W]e are unable to conclude from the [CSRA] that Congress intended to provide an independent judicial remedy to employees.").  Nor does the CSRA provide for jurisdiction over appeals of decisions rendered by the MSPB in this Court; only the United States Court of Appeals for the Federal Circuit may hear such petitions.  See 5 U.S.C. §§ 1215(a)(4) and 1221(h)(2), incorporating 5 U.S.C. §7703(b)(1); see also United States v. Fausto, 484 U.S. 439, 449 (1988).

The United States Court of Appeals for the District of Columbia Circuit nevertheless has concluded that a United States District Court does have subject matter jurisdiction to issue a writ of mandamus if it determines that OSC violated a non-discretionary statutory duty to investigate an employee's allegations.  See Weber v. United States, 209 F.3d at 756.  The court reasoned that because the Federal Circuit reviews only MSPB decisions and not OSC actions or decisions, depriving the district courts of mandamus jurisdiction over claims that OSC has failed to perform a statutory duty would foreclose all relief for such a failure.  See id. at 759.

2. Standards for Relief in Mandamus

The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances."  Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).  Only

"exceptional circumstances amounting to a judicial 'usurpation of power'" will justify issuance of the writ. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988) (quoting Will v. United States, 389 U.S. 90, 95 (1967)); see also In re Leeds, 951 F.2d 1323, 1323 (D.C. Cir. 1991). Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)); see also Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper of the United States Senate, 471 F.3d 1341, 1350 (D.C. Cir. 2006) (concluding that the extraordinary remedy of mandamus need not issue in a case arising under the Congressional Accountability Act where the issue could be addressed by an appeal from a final judgment). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" Power v. Barnhart, 292 F.3d at 784 (quoting Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C. Cir. 1997)). Where the action petitioner seeks to compel is discretionary, petitioner has no clear right to relief and mandamus therefore is not an appropriate remedy. See, e.g., Heckler v. Ringer, 466 U.S. 602, 616 (1984); Weber v. United States, 209 F.3d at 760 ("[M]andamus is proper only when an agency has a clearly established duty to act.").

## II. DISCUSSION

Petitioner has filed numerous grievances with the OSC, two of which are at issue in this case (MA-06-2118 and MA-06-2752). Petitioner raises three shortcomings of the OSC in addressing his complaints that he believes this Court must remedy. Petitioner asserts: (1) that the

OSC did not use the statutorily required language in its pre-determination letters; (2) that the OSC did not include the statutorily required termination statement in the termination letters; and (3) that the OSC included information prejudicial to petitioner in the letter informing petitioner of his individual right of action.  See Petition ¶¶ 7-9.  Petitioner's first and third grounds for mandamus fail because petitioner misconstrues the statutory requirements.  Contrary to petitioner's assertions, OSC has met its statutory requirements.  Petitioner's second ground does raise a technical violation.  Due to the extreme nature of the remedy of mandamus, however, the Court concludes that mandamus is not the appropriate remedy for such a technical violation.[1]

### A. Language in the pre-determination letters

Petitioner asserts that the OSC should have included in the pre-determination letter a statutorily mandated determination of "whether there are (not) reasonable grounds to believe a prohibited personnel practice has occurred, exists, or is to be taken." Petition ¶ 7.[2]  The Court finds that while the statute does use petitioner's language in Section 1214(a)(1)(A), that language refers to the general duties of the Special Counsel in the investigation of PPPs.  The statute does not require that the OSC use those exact words when writing its pre-determination letter.  Rather, the statute states only that "[n]o later than 10 days before the Special Counsel terminates any investigation of a prohibited personnel practice, the Special Counsel shall provide

---

[1] In petitioner's response to respondent's motion to dismiss, he asserts new legal arguments.  See Opp. at 8-10.  But a petitioner "may not amend his complaint through his opposition papers."  Bigwood v. U.S. Agency for International Development, 484 F.Supp.2d 68, 71 (D.D.C. 2007); see also Doe I v. State of Israel, 400 F.Supp.2d 86, 100 (D.D.C. 2005).  Only those claims raised in his original petition are addressed by this Opinion.

[2] Petitioner raised this issue in Carson I.  In that case, the Court found the claim was barred by the statute of limitations.  See Carson I, 2006 WL 785 292 (D.D.C. 2006).

a written status report to the person who made the allegation of the proposed findings of fact and legal conclusions. . . ." 5 U.S.C. § 1214(a)(1)(D).[3]

In response to complaint MA-06-2118, the OSC gave petitioner guidance on the elements required and the legal standard to be met and stated that "without further information concerning the facts and law . . . , we have made a preliminary determination to close our inquiry into your allegations." August 3, 2007 Letter from OSC to Joseph Carson, Plaintiff's Exhibit 1 to Petition ("Pl. Ex. 1") at 1. Although the statement does not use the phrase "reasonable grounds" as petitioner would assert is necessary, the OSC meets its statutory obligation under Section 1214 (a)(1)(D). Likewise, in response to petitioner's second complaint, MA-06-2752, the OSC explained that the complaint "does not contain any new information that would alter our determinations in previous complaints." September 22, 2006, Letter from OSC to Joseph Carson, Pl. Ex. 3 to Petition at 1. Again, although not using petitioner's magic words, the OSC was clear that it had concluded that there are not enough supporting facts to find that a PPP has occurred.

The OSC is not required to use any specific language in making its determinations and providing written status reports. The Court agrees with respondent that the letters in response to petitioner's complaints fully addressed and met the statutory requirements of such a letter. Cf. Carson I, 2006 WL 785292, at *5 (finding that although the OSC did not explicitly label its reason for not investigating a complaint as a "legal conclusion" OSC had nevertheless

---

[3] The statute goes on to state in Section 1214(a)(1)(D) that the complainant "may submit written comments about the report to the Special Counsel. The Special Counsel shall not be required to provide a subsequent written status report under this subparagraph after the submission of such written comments." 5 U.S.C. § 1214(a)(1)(D).

met its statutory burden).  Petitioner's first ground for relief fails, because the OSC has fulfilled its statutory duties.

*B.  The Termination Statement*

Petitioner next argues that the PPP termination letters for his complaints (MA-6-2118 and MA-06-2752) do not contain the statutorily required "termination statement." See Petition ¶ 8.  Section 1214 requires that the OSC issue a written statement to the complainant.  The written statement must notify the person of:

> (i)    the termination of the investigation;
> (ii)   a summary of relevant facts ascertained by the Special Counsel, including the facts that support and the facts that do not support, the allegations of such person;
> (iii)  the reasons for terminating the investigation; and
> (iv)   a response to any comments submitted under paragraph (1)(D).

5 U.S.C. § 1214 (a)(2)(A).  In addition, a note to Section 1214 indicates that

> [t]he Special Counsel shall include in any letter terminating an investigation under section 1214(a)(2) of title 5, United States Code, the name and telephone number of an employee of the Special Counsel who is available to respond to reasonable questions from the person regarding the investigation or review conducted by the Special Counsel, the relevant facts ascertained by the Special counsel and the law applicable to the person's allegations.

United States Office of Special Counsel, Merit Systems Protection Board: Authorization, Pub. L. 103-424 Section 12(b), 108 Stat. 4361.

Petitioner correctly asserts that the termination statement, required by Section 1214(a)(2)(A) and described in the above note to the statute, is missing from the PPP termination letters he received from the OSC.  See August 29, 2006 letter from OSC to Joseph

Carson, Pl. Ex. 2 to Petition; October 16, 2006 letter from OSC to Joseph Carson, Pl. Ex. 4 to Petition. Petitioner asserts that this Court has jurisdiction to force the OSC to comply with its statutory obligations through the issuance of a writ of mandamus. See Petition ¶ 1.

In Weber, the D.C. Circuit held that federal district courts have jurisdiction to issue a writ of mandamus to the OSC, reasoning that "where OSC violate[s] a statutory duty to investigate [a complainant's] allegations" there may be no recourse for the complainant because such a claim "could not [be] ma[d]e before the MSPB or the Federal Circuit." Thus, "if district courts lacked power to issue the writ, judicial review of OSC actions would not be available." Weber v. U.S. Office of Special Counsel, 209 F.3d at 759. The court in Weber determined, however, that mandamus was not the appropriate remedy in that case because there was no clearly established duty to act. See id. at 760.

While it is a technical violation of the statute not to include a termination statement in a termination letter, it is not the type of violation that would warrant the "extreme remedy" of a writ of mandamus. Petitioner has had extensive dealings with the OSC, in which he has filed over 20 PPPs. See Pet. Opp. at 4. In the termination letter dated August 29, 2006, the OSC refers to a phone conversation between petitioner and the OSC. See August 29, 2006 letter from OSC to Joseph Carson, Pl. Ex. 2 to Petition. Petitioner in this case obviously has the ability to contact and ask reasonable questions of an employee at the OSC. Here, the OSC has met the substantive statutory burden to respond in writing with a termination letter. The failure to include the termination statement appears to be nothing more than an oversight that does not warrant issuance of a writ of mandamus.

Petitioner concedes that the complaints at issue in this case deal with "issues of law [that] are almost identical and the facts similarly incontestable" to those in his case that is on appeal. See Petition at 2; see also July 19, 2007 Notice of Order in Related Case (in which petitioner notes that the issues in this case are "nearly identical" to the issues on appeal to the D.C. Circuit). Because the case on appeal deals with the same legal and factual issues, petitioner cannot meet the third requirement for a writ of mandamus, that "there is no other adequate remedy available to plaintiff." In re Medicare Reimbursement Litigation, 414 F.3d at 10 (quoting Power v. Barnhart, 292 F.3d at 784).[4] Because the Court finds that OSC has met its substantive statutory requirements by issuing the termination letter, and because petitioner cannot establish his right to mandamus, this Court will not order a writ of mandamus to include a termination statement on the termination letters from OSC.

### C. The Individual Right of Action Letter

Finally, petitioner asserts that the notice accompanying the OSC termination letter for MA-06-2118 contained "additional prejudicial information, not authorized by statute at 5 USC 1214(a)(3)(A)(I) [sic], and prohibited by statute at 5 USC 1212(g)(1) [sic] and 5 USC 1214(b)(2)(E)[sic][.]"[5] Respondent argues, however, and the Court agrees, that the individual

---

[4] Petitioner asserts that his petition for mandamus is not based on the lack of a telephone number on the termination letter but rather on some greater failure to disclose information. See Opp. at 14. The writ, if issued, would require the termination statement, but would not necessarily address petitioner's grievances. As noted, a writ of mandamus is an extraordinary remedy that is not appropriate for such a technical statutory violation. See, e.g., Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. at 34.

[5] 5 U.S.C. § 1214(a)(3) provides:

> Except in a case in which an employee, former employee,

right of action letter is not required by statute, and that any information included in the right of action letter was not prejudicial to the petitioner. See Bauer v. Department of the Army, 88 M.S.P.R. 352, 354 (2001) ("there is nothing in the statute that requires that OSC give the appellant notice of his appeal right to the MSPB"); see also Mot. at 7.

The statute requires that a person who has filed a complaint alleging retaliation for whistleblower activities must first seek corrective action from the Special Counsel before seeking

---

or applicant for employment has the right to appeal directly to the Merit Systems Protection Board under any law, rule, or regulation, any such employee, former employee, or applicant shall seek corrective action from the Special Counsel before seeking corrective action from the Board. An employee, former employee, or applicant for employment may seek corrective action from the Board under section 1221, if such employee, former employee, or applicant seeks corrective action for a prohibited personnel practice described in section 2302(b)(8) from the Special Counsel and . . . the Special Counsel notifies such employee, former employee, or applicant that an investigation concerning such employee, former employee, or applicant has been terminated[.]

5 U.S.C. § 1212(g)(1) provides:

The Special Counsel may not respond to any inquiry or disclose any information from or about any person making an allegation under section 1214(a), except in accordance with the provisions of section 552a of title 5, United States Code, or as required by any other applicable Federal law.

5 U.S.C. § 1214(b)(2)(E) provides:

A determination by the Special Counsel under this paragraph shall not be cited or referred to in any proceeding under this paragraph or any other administrative or judicial proceeding for any purpose, without the consent of the person submitting the allegation of a prohibited personnel practice.

corrective action from the Merit Systems Protection Board. See 5 U.S.C. § 1214(a)(2)(B)(3).  An employee who has first gone to OSC may seek corrective action from the MSPB under Section 1221 in either of two situations: (1) if the OSC has notified the employee that the investigation has been terminated, and the employee acts within 60 days of receiving notification of the termination; or (2) 120 days after making the complaint to OSC if the applicant has received no notice from the Special Counsel.  See 5 U.S.C. § 1214(a)(3).  In neither scenario is the right of action letter necessary or required.  A MSPB form with instructions on how to file an individual right of action appeal, attached by petitioner states:  "[*I*]*f* you have received written notice from OSC of your right to file an IRA appeal with the Board, **attach a copy of the OSC notice.**" Instructions for Appeal, Pl. Ex. 10 to Opp at 1 (italics added, bold in original).  The language in the instructions indicates that the letter is requested, not required.

In Bauer, the MSPB concluded that failure to deliver a right of action letter would not toll the 60 day time limit under Section 1214(a)(3)(A)(ii), because the statute only requires notice of termination, not notice of an individual right to appeal.  See Bauer v. Department of the Army, 88 M.S.P.R at 354.  Thus, in Bauer the MSPB found that the right of action letter was not statutorily required.  Id.  Because the individual right of action letter is not required by statute and is issued "as a courtesy," any information included in the letter – whether or not prejudicial – is not a violation of the statute.  Cf. Williams v. Merit Systems Protection Bd., 89 Fed. Appx. 714, 716-717 (Fed. Cir. 2004) (unpublished opinion) (noting that the MSPB had not interpreted the statute to require the Office of Special Counsel to provide whistleblower claimants with notice of their appeal rights to the Board, and extending the reasoning to "conclude[] that there was no statutory or regulatory requirement that DOL notify the veteran

complainant of his appeal rights, and that DOL was required only to notify the veteran of the results of the Department's investigation.").

In sum, the Court concludes that two of the three alleged violations were not, in fact, violations, and that the third alleged violation – failure to include a termination statement – was a technical violation for which the drastic remedy of mandamus is not appropriate. The Court therefore will dismiss the petition for a writ of mandamus. An Order consistent with this Opinion will be issued this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 27, 2007